# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CYBEX INTERNATIONAL, INC.** | **Civil Action No. 04-11846 (DPW)** |
| **Plaintiff,** | |
| **v.** | |
| **BIOSIG INSTRUMENTS, INC.** | |
| **Defendant.** | |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER

---

Humayun Siddiqi (pro hac vice pending)
Law Offices of Zafar Siddiqi
Attorneys for Defendant Biosig Instruments, Inc.
11 Broadway, Suite 853
New York, NY 10004
Tel. (212) 514-5900
Fax (212) 514-5005

## TABLE OF CONTENTS

Page

Table of Authorities……………………………………………………..  ii

I. Introduction………………………………………………………...  1

A. Introduction – The Parties…………………………………………...  1

B. Background………………………………………………………….  3

II. Argument……………………………………………………………  5

A. The Court Lacks Personal Jurisdiction Over
Biosig…………………………………………………………………….  5

(1) Personal Jurisdiction – The Law……………………………………..  5

(2) Massachusett's Long Arm Statute Does Not Permit Service……………  6

(3) Assertion of Personal Jurisdiction Would Violate Due Process…………  9

(i) Biosig Has Not Purposefully Directed Its Activities At Residents of
Massachusetts…………………………………………………………...  9

(ii) Cybex's Claim Does Not Arise Out Of Or Relate To Biosig's Activities.  11

B. The Court Should Exercise Its Discretion Under The Declaratory
Judgment Act And Either Dismiss The Action Or Transfer The Action To
The Southern District Of New York……………………………………….  12

(1) The Court Should Refuse To Exercise Its Discretionary Jurisdiction And
Dismiss The Action…………………………………...……………………  13

(2) The Balance of Convenience Favors Dismissal or Transfer of the Action  16

III. Conclusion……………………………………………………………  20

## TABLE OF AUTHORITIES

### Cases

Akro Corp. v. Luker, 45 F. 3d 1541 (Fed.Cir. 1995).................................................... 6, 10

Asahi Metal Indus. Co. v. Superior Court 480 U.S. 102, 112 (1987)............................. 10

Back Bay Farm v. Collucio, 230 F.Supp.2d 176, 180 (D. Mass 2002) ............................ 6

Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). ... 18

Cygnus Therapeutics Systems. v. Alza Corp, 92 F.3d 1153 (Fed. Cir. 1996)................... 7

Davox Corporation v. Digital Systems International, 846 F.Supp. 144 (D. Mass. 1993). 15

EMC Corporation v. Norand Corporation, 89. F.3d 807 (Fed. Cir 1996) ............. 7, 12, 15

Fairfax Dental Ltd. v. S.J. Filhol Ltd., 645 F.Supp. 89 (E.D.N.Y. 1986)........................ 20

Ferens v. John Deere Co., 494 U.S. 516, 110 S. Ct. 1274 (1990) .................................... 19

Genentech, Inc. v. Eli Lilly and Company, 998 F.2d 931 (Fed. Cir. 1993).......... 12, 16, 19

Genetic Implant Systems, Inc. v. Core-Vent Corporation, 123 F.3d 1455 (Fed. Cir. 1997)
................................................................................................................................. 6, 9, 10

GSI Lumonics, Inc. v. Biodiscovery, Inc., 112 F.Supp.2d 111 (D.Mass. 2000) ............... 8

Inamed Corporation v. Kuzmak, 249 F.3d 1356 (Fed. Cir. 2001)............................. 11, 12

Measurement Computing v. General Patent, 304 F.Supp.2d 176 (D. Mass. 2004).... 6, 8, 9

Nova Biomedical Corporation v. Moller, 629 F.2d 190 (1st Cir. 1980) ............................ 8

Ontel Products v. Project Strategies Corp., 899 F.Supp. 1144 (S.D.N.Y 1995).............. 13

Pixel Enhancement Laboratories v. McGee 1998 WL 518187 (D. Mass 1998) .............. 16

Silent Drive, Inc. v. Strong Industries, Inc., 326 F.3d 1194 (Fed Cir. 1993) ......... 9, 10, 11

Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 108 S. Ct. 2239....................... 18

Symbol Technologies v. Quantum Associates , 2002 WL 225934 (D.Mass 2002). ........ 16

Wilton v. Seven Falls Company, 515 U.S. 277, 115 S.Ct. 2137 ..................................... 12

### Statutes

28 U.S.C. § 1404(a) ....................................................................................... 1, 16, 18, 19

Mass. Gen. L. Chapter 223A: Section 3 ............................................................................ 6

New York Civil Practice Law and Rules §213 ................................................................ 17

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CYBEX INTERNATIONAL, INC.** | **Civil Action No. 04-11846 (DPW)** |
| **Plaintiff,** | **MOTION TO DISMISS OR TO TRANSFER** |
| **v.** | |
| **BIOSIG INSTRUMENTS, INC.** | |
| **Defendant.** | |

Defendant, Biosig Instruments, Inc., ("Biosig") submits this memorandum in support of its motion to either dismiss Plaintiff's, Cybex International, Inc's ("Cybex") complaint or, alternatively, to transfer the action to the United States District Court for the Southern District of New York on the following grounds.

Firstly, the Court lacks personal jurisdiction over Biosig which has no offices employees, distributors, licensees, assets or bank accounts in Massachusetts.

Secondly, Cybex's action is an ill-disguised anticipatory filing and the Court should decline to exercise its discretionary jurisdiction.

Thirdly, the balance of convenience favors dismissal of this action or, alternatively, transfer of this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York.

# I. INTRODUCTION

## A.    Introduction – The Parties

Biosig is a corporation organized and existing under the laws of Canada. (Affidavit of Gregory Lekhtman ("Lekhtman Aff.") ¶2. Biosig has one office and place of business at 440-19th Avenue, Lachine, Quebec, Canada. Id. ¶3.

Biosig has no corporate offices or research and development facilities in Massachusetts. Id. ¶4. Biosig does not own any real estate in Massachusetts. Id. ¶5. Biosig has no subsidiaries, divisions, joint venture partners or operations in Massachusetts. Id. ¶6. Biosig has no employees in Massachusetts. Id. ¶8. Biosig has no agents in Massachusetts. Id. ¶7. Biosig does not own any real estate in Massachusetts. Id. ¶5. Biosig is not incorporated in Massachusetts, is not registered to do business in Massachusetts and has no pending license to do business in Massachusetts Id. ¶14.

Biosig has no distributors in Massachusetts. Id. ¶10. Biosig has no non-exclusive licensees in Massachusetts. Id. ¶11. Biosig has no exclusive licensees in Massachusetts. Id. ¶12. Biosig does not regularly transact business or solicit business in Massachusetts Id. ¶13. Biosig pays no corporate taxes in Massachusetts. Id. ¶16. Biosig has no bank accounts or phone listing in Massachusetts Id. ¶17. Biosig's only contacts with the Massachusetts are advertisements in national and trade journals that are distributed in Massachusetts. Id. ¶18.

Cybex is a New York corporation having its headquarters and principal place of business at 10 Trotter Drive, Medway, Massachusetts. Declaration of Humayun Siddiqi ("HS Decl."), Exhibit A, ¶1. Cybex is a publicly traded manufacturer of exercise equipment for use in commercial gyms and for in-home use by the public with worldwide sales in 2003 of approximately $83,000,000. HS Decl., Exhibit B, ¶4. As of March 12, 2004 Cybex employed 486 persons on a full-time basis. HS Decl., Exhibit C, Page 7.

Cybex has approximately 70 active dealers in North America and a national account team that focuses on major segments such as health clubs and gyms, hotels, resorts, the U.S. Government and organizations such as YMCAs. Id. Page 4. Cybex has a wholly owned subsidiary, Cybex UK, that directly markets and sells Cybex products in the United Kingdom and also operates a distribution center in the United Kingdom which serves Cybex operations throughout Europe. Id., Page 4-5. Cybex also has a substantial international presence with 61 independent distributors in 65 countries. Id., Page 5.

**B.    Background**

The relationship between Biosig and Cybex dates back to the mid 1990's. Biosig supplied Cybex with certain proprietary and confidential information pertaining to the incorporation of heart monitors in exercise equipment. The information provided was subject to a confidentiality agreement that was executed by both parties. HS. Decl., Exhibit D. Biosig also supplied Cybex with components to be incorporated in exercise equipment incorporating heart monitors. Cybex contends that it had no dealings with Biosig after the first half of 1998. HS Decl., Exhibit B, ¶12. Biosig has produced an invoice dated February 25, 2000 for sensors that were shipped to Cybex. HS. Decl., Exhibit E.

In a letter dated April 30,1999 Biosig's principal informed Cybex that it was, inter alia, infringing on Biosig's patent and breaching the terms of the confidentiality agreement and, on May 20, 1999 he followed up with a second letter that repeated substantially the same allegations. HS Decl., Exhibit F, G. Cybex responded with a curt denial and the implied threat to cut of dealings with the substantially smaller Biosig. HS Decl., Exhibit H.

In 2001 Biosig retained U.S. counsel who informed Cybex of Biosig's concern with respect to both patent infringement issues and the breach of the confidentiality agreement and who offered to initiate licensing discussions. HS Decl., Exhibit I. Cybex again responded with a curt denial of any infringing activity. HS Decl., Exhibit J.

Determined to finally resolve its outstanding issues with Cybex through either negotiation or legal channels Biosig undertook a last ditch effort and Biosig's Canadian counsel sent a letter dated March 1, 2004 informing Cybex that it was infringing Biosig's United States Patent 5,337,753, that it was infringing Biosig's Canadian Patent 2,033,014 and that it was in breach of the confidentiality agreement. HS Decl, Exhibit K & Affidavit of David Mrejen ("Mrejen Aff. ), ¶2.  Cybex responded in a letter dated March 25, 2004 from its legal counsel requesting information relative to identifying infringing products and the contents of the confidentiality agreement. HS Decl., Exhibit L & Mrejen Aff. ¶3.  In a letter dated April 20, 2004 Biosig's Canadian counsel responded with certain contentions relative to the earlier request of Cybex's legal counsel. HS Decl., Exhibit M & Mrejen Aff. ¶4. On July 9, 2004 Biosig's Canadian counsel sent a letter to Cybex's counsel providing a list of infringing products and the parameters of a settlement agreement. HS Decl., Exhibit N & Mrejen Aff. ¶5. This was the last written communication between the parties and all subsequent communications were by telephone.

During telephone conversations that took place between July 9, 2004 and August 25, 2004 the parties discussed the parameters of a settlement agreement acceptable to both parties, the number of infringing units, and the value of a license for future sales. Mrejen Aff. ¶6-8.  Biosig's Canadian counsel concedes that during the course of these

conversations deadlines were set but that on the basis of positive feedback he desisted from filing suit. Id. ¶17. During August, 2004 and after sensing some reluctance to settle on the part of Cybex, Biosig's Canadian counsel spoke with Cybex's counsel for the purpose of determining whether Cybex was actually interested in obtaining a license, barring which Biosig would pursue its options by taking legal action. Id. ¶11. Subsequent to this conversation Cybex's counsel informed Biosig's Canadian counsel that he had been instructed to keep communications open with Biosig and to continue talking. Id. ¶12. At no point in time was Biosig's Canadian counsel told that Cybex wished to terminate negotiations or discussions. Id. ¶16. Concurrently, while negotiations were ongoing with Cybex, Biosig was in negotiations with another party, The Nautilus Group ("Nautilus"), that reached an impasse and on August 17, 2004 Biosig filed suit against Nautilus in the United States District Court for the Southern District of New York. HS Decl., Exhibit O.

On August 25, 2004 Biosig's Canadian counsel was blindsided by Cybex's counsel who stated that an action seeking a declaratory judgment of non-infringement and invalidity had been filed in the District of Massachusetts. Id. ¶18. On August 26, 2004 Biosig filed a complaint against Cybex in the United States District Court for the Southern District of New York alleging patent infringement, breach of contract and unfair competition. HS Decl., Exhibit P.

II.    **Argument**

      **A. The Court Lacks Personal Jurisdiction Over Biosig**

      **(1) Personal Jurisdiction – The Law**

Rule 12(b)(2) provides that prior to filing an answer a defendant may move to dismiss the action for lack of jurisdiction over the person.  When faced with Rule 12(b)(2) motion, a plaintiff must go beyond the pleadings and affirmatively prove that sufficient contacts exist between the defendant and the foreign state <u>Back Bay Farm v. Collucio</u>, 230 F.Supp.2d 176, 180 (D. Mass 2002) (citations omitted).

Relative to the application of the appropriate law, the determination of personal jurisdiction is to be made in accordance with Federal Circuit law, <u>Measurement Computing v. General Patent</u>, 304 F.Supp.2d 176, 179  (D. Mass. 2004) citing <u>Akro Corp. v. Luker</u>, 45 F. 3d 1541, 1543 (Fed.Cir. 1995). The Federal Circuit in turn has indicated that the determination of whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process <u>Genetic Implant Systems, Inc. v. Core-Vent Corporation</u>, 123 F.3d 1455, 1458 (Fed. Cir. 1997). In the instant matter it is readily apparent that the Massachusetts long-arm statute does not permit service of process and, arguendo, that if the long-arm statute did permit such service that an assertion of personal jurisdiction would not comport with the norms of due process.

**(2) Massachusett's Long Arm Statute Does Not Permit Service of Process**

The relevant portion of the Massachusetts long-arm statute is reproduced below.

Mass. Gen. L. Chapter 223A: Section 3 Transactions or conduct for personal jurisdiction

Section 3. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;
(b) contracting to supply services or things in this commonwealth;

The barebones pleading of Cybex does not indicate whether Cybex is premising jurisdiction on a contractual basis, general transactional activities or a specific transactional basis. In any case a finding of personal jurisdiction fails.

Biosig's last contact with Massachusetts was in either June, 1998, according to Cybex or February, 2000, according to Biosig. At the very minimum, it has been four years and one half years since Biosig has made a sale to either Cybex or, as Cybex was Biosig's sole Massachusetts customer, to any other Massachusetts entity. Biosig has no distributors, non-exclusive licensees or exclusive licensees in Massachusetts and does not regularly transact or solicit business in Massachusetts and, as such no base exists upon which general jurisdiction can be premised. Lekhtman Aff. ¶10-¶13.

The only apparent basis for asserting personal jurisdiction over Biosig arises from letters sent to Cybex alleging infringement. Cybex, unfortunately, has not referred with particularity to which letters form the basis of its cause of action. However, in the related New York action, Cybex has referred to a campaign of patent infringement harassment stemming from letters received in 1999, 2001 and 2004. SEE LETTERS HS Decl., Exhibits F, G, I, K, M, N. With respect to the letters from 1999, a five year old threat is insufficient to create a reasonable apprehension of suit (Cygnus Therapeutics Systems. v. Alza Corp, 92 F.3d 1153 (Fed. Cir. 1996) (overruled in part to the extent that it held regional antitrust law governs a patentee's immunity under antitrust laws). With respect to the letter from 2001 from Biosig's then US counsel, it contains an offer to license and it is well accepted that a patentee's offer of a license, without more, is insufficient to establish the predicate for declaratory judgment jurisdiction (EMC Corporation v. Norand Corporation, 89. F.3d 807, 811 (Fed. Cir 1996). Cybex's sole cause of action arises from

cease and desist letters and threats of litigation made subsequent to March 1, 2004, over four and a half years after Biosig's business dealings with Cybex had terminated.

Such letters in and of themselves are insufficient to premise jurisdiction over Biosig. In Nova Biomedical Corporation v. Moller, 629 F.2d 190, 196 (1st Cir. 1980) the Court Appeals for the First Circuit held that "we do not hold here nor did the court in B&J Manufacturing that sending threatening infringement letters into the forum district suffices to succumb to that district's jurisdiction (citations omitted)". In Nova Biomedical the court premised jurisdiction (1) where the defendant is conducting or planning some patent-related business activity in the forum, whether directly, by engaging in the manufacture or sale of products, or indirectly, by receiving royalties from a licensee who is so engaged, and (2) where the plaintiff is pursuing a competing line of work there. Nova Biomedical, 629 F.2d 195. Biosig does not conduct any patent-related activity in Massachusetts and receives no royalties from licensees in Massachusetts. Lekhtman Aff. ¶4, ¶11-12.

It is apparent that finding personal jurisdiction on the basis of the long arm statute requires significantly more than warning letters. By way of illustration such activities include the presence of a wholly owned subsidiary that negotiated and granted licenses to two companies in Massachusetts (Measurement Computing, 304 F.Supp.2d 180,181) or significant licensing and distribution activities in Massachusetts (GSI Lumonics, Inc. v. Biodiscovery, Inc., 112 F.Supp.2d 111 (D.Mass. 2000). Biosig has no subsidiaries in Massachusetts, no distributors in Massachusetts, no exclusive licensees in Massachusetts, no non-exclusive licensees in Massachusetts and no subsidiaries in Massachusetts. Lekhtman Aff. ¶6, ¶10-12.

8

### (3) Assertion of Personal Jurisdiction Would Violate Due Process

Were the Court to find that it could assert personal jurisdiction over Biosig under Massachusett's long arm statute, which for the foregoing reasons it should not, then such a finding of personal jurisdiction would still not comport with the norms of due process. A three prong minimum contacts test is used to determine whether jurisdiction comports with due process and involves consideration of the following three factors: (1) whether the defendant purposefully directed its activities at residents at the forum, (2) whether the claim arises out of or relates to those activities with the forum and (3) whether assertion of personal jurisdiction is reasonable and fair. <u>Genetic Implant Systems</u>, 123 F.3d 1455, 1458. Relative to the first two factors Cybex bears the burden of making a prima facie showing that Biosig is subject to personal jurisdiction <u>Measurement Computing</u>, 304 F.Supp.2d 176,180 (citation omitted). As Cybex cannot make such a showing Biosig will not treat the third factor.

### (i)    Biosig Has Not Purposefully Directed Its Activities At Residents Of Massachusetts

While a much quoted dictum it is well worth emphasizing that cease-and-desist letters do not suffice to assert personal jurisdiction over an out of state patentee. The Federal Circuit has repeatedly expounded at some length on this proposition stating that

> the sending of letters threatening infringement litigation is not sufficient to confer personal jurisdiction. We provided a comprehensive rationale in *Red Wing*. The case explains that, even though the letters are "purposefully directed" at the forum and the declaratory judgment "arises out of" the letters, the letters threatening suit for patent infringement sent to the alleged infringer by themselves "do not suffice to create personal jurisdiction" because to exercise jurisdiction in such a situation would not "comport with fair play and substantial justice". (citation omitted). <u>Silent Drive, Inc. v. Strong Industries, Inc.</u>, 326 F.3d 1194, 1202 (Fed. Cir. 2003)

It is apparent that "something more" is required. Over the years the Federal Circuit has had the opportunity to extensively develop case law relative to what constitutes "something more". In <u>Akro Corporation v. Luker</u>, 45 F.3d 1541, 1546 (Fed. Cir. 1995) the negotiation of an exclusive patent license agreement with forum residents, and directing letters warning of patent infringement to their agents" was sufficient to premise jurisdiction. In <u>Genetic Implant Systems</u>, 123 F.3d 1455, 1458 the existence of an exclusive worldwide marketing and distribution agreement with a third party company that made substantial sale of the defendant's products in the forum state and had sales representatives in the forum was sufficient to premise jurisdiction. Both of these decisions are consonant with the Supreme Court's determination in <u>Asahi Metal Indus. Co. v. Superior Court</u> 480 U.S. 102, 112 (1987) that the placement of product into stream of commerce, plus "something more" e.g. advertising, establishing channels for advice to customers in the state or using a sales agent in the forum, might subject defendant to jurisdiction in the forum state." It is apparent, however, that with respect to Biosig that "something more" does not exist as Biosig has no employees in Massachusetts, no distributors in Massachusetts, no exclusive licensees in Massachusetts and no non-exclusive licensees in Massachusetts. Lekhtman Aff. ¶8, ¶10-12.

The facts in this matter as they relate to personal jurisdiction read on those presented to the Federal Circuit in <u>Silent Drive</u>, 326 F.3d 1194. There, the declaratory judgment plaintiff filed a complaint that included a count seeking a determination of patent invalidity and non-infringement. <u>Id.</u>,1199, 1200. The complaint alleged that letters, along with a news release, were sent to the plaintiff and the plaintiff's customers that if not directly, then impliedly, threatened an action for patent infringement. <u>Id.</u>, 1202. The

court held that the plaintiff had not alleged other sufficient activities related to the claim of patent non-infringement and invalidity to premise jurisdiction although it did find pendent jurisdiction on the basis of other another count that was not patent related. Id., 1202, 1203.

**(ii) Cybex's Claim Does Not Arise Out Of Or Relate To Biosig's Activities**

As has been emphasized, the only contact that Biosig has had with Massachusetts are past sales to Cybex dating to either the first half of 1998, as alleged by Cybex, or February, 2000 as substantiated by Biosig. In either case, Biosig's relationship with Cybex had terminated for some time before Biosig's first cease and desist letter was sent in March, 2004. Thus, there is a gap of at least four and one half years between Biosig's past in-state activities and Cybex's present cause of action stemming from the cease and desist letters sent after March 1, 2004. The lack of a temporal overlap precludes any finding that Cybex's cause of action arises of Biosig's past Massachusett's activities. In Inamed Corporation v. Kuzmak, 249 F.3d 1356 (Fed. Cir. 2001) the declaratory judgment defendant conducted licensing negotiations with the plaintiff in 1993 that eventually concluded in a licensing agreement which was subsequently terminated in December, 1998 by the plaintiff. Id., 1359. In February, 1999 the plaintiff commenced a declaratory judgment action seeking a declaration of invalidity, unenforceability and noninfringement and also included a breach of contract count and an allegation of patent misuse that dated back to the 1993 licensing negotiations (emphasis added). Id. The lower court dismissed the action on the basis that the license agreements had been terminated. Id. The Federal Circuit reversed, finding that the misuse allegation that dated back to the 1993 licensing negotiation related or arose from the parties license agreements and subsequently asserted

pendent personal jurisdiction over the invalidity, unenforceability and noninfringement counts of the complaint.  Id., 1362. It can inferred that, were it not for the existence of a cause of action dating back to the parties original negotiations, the lower court's finding would have remained undisturbed as the licensing agreement between the parties had been terminated for a period of approximately three months. Cybex has had no dealings with Biosig for a period in excess of four years and has not asserted any cause of action arising from the prior dealings between Cybex and Biosig that would allow this court to exercise pendent jurisdiction over Cybex's patent related causes of action.

**B.     The Court Should Exercise Its Discretion Under the Declaratory Judgment Act and Either Dismiss the Action or Transfer the Action to the Southern District of New York**

The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. Wilton v. Seven Falls Company, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142. On its face, the statute provides a court "may declare the rights and other legal relations of any interested party seeking such declaration". Id.  Patent related matters are no exception and with respect to declaratory judgment actions it has been noted that even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction but has the discretion to decline that jurisdiction although such discretion is not unfettered. EMC, 89 F.3d 807, 813.

Relative to patent matters it has been recognized that the general rule favors the forum of the first-filed action, whether or not it is a declaratory action. Genentech, Inc. v. Eli Lilly and Company, 998 F.2d 931, 937 (Fed. Cir. 1993). Exceptions are not rare and are made when justice or expediency requires and in any issue of choice of forum. Id.

There must be sound reason that would make it unjust or inefficient to continue the first-filed action; such reason may be the convenience and availability of witness, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest. Id., 938 (citations omitted).

**(1) The Court Should Refuse To Exercise Its Discretionary Jurisdiction And Dismiss The Action**

Cybex was originally contacted by Biosig's Canadian counsel by a letter dated March 1, 2004. Cybex filed its declaratory action on August 24, 2004. While Cybex's complaint might indicate otherwise, in the interim a dialogue was ongoing between the representatives of the two parties towards the goal of achieving a mutually acceptable settlement. Biosig's Canadian counsel was never given any indication that the talks had broken down and, accordingly, acted to avoid the possibility of litigation. To allow Cybex to profit from Biosig's responsible attitude would be inequitable as, where a party is prepared to pursue a lawsuit but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to file a mirror suit. Ontel Products v. Project Strategies Corp., 899 F.Supp. 1144, 1150 (S.D.N.Y 1995).

In the related New York action Cybex has tendered a declaration that includes the following statement from its counsel.

> "Throughout this Spring and Fall, I spoke on several occasions with Biosig's Canadian counsel, David Mrejen, in an effort to explain (again) why Cybex believes Biosig's patent infringement and other claims against the company are baseless. On virtually every occasion, Mr. Mrejen, threatened that unless Cybex settled immediately (or by some other deadline) Biosig would commence a lawsuit against the company. But, Biosig never did." HS Decl., Exhibit R.

Implicit in this statement is the assertion that no negotiations were underway. However, the documentary record, the affidavit of Biosig's Canadian counsel and the declaration of Cybex's own Vice-President of Research & Development contradict this assertion.

With respect to the documentary evidence, it consists of a letter of demand from Biosig's Canadian counsel, a letter from Cybex responding with a request for particulars, a letter from Biosig's Canadian counsel providing certain information and a letter from Biosig's Canadian counsel providing a list of infringing equipment and the outline of a settlement agreement. Decl. HS, Exhibit K, L, M, N. It strains the very limit of credulity to believe that Biosig's Canadian counsel would, of his own volition and in the face of unending assertions to the effect that Biosig's patent infringement claims were baseless, simply send letters to Cybex's counsel and engage in an imaginary dialogue that included settlement terms.  Any objective and unbiased reading of the correspondence reveals that negotiations were underway. The documentary evidence is further bolstered by the affidavit of Biosig's Canadian counsel attesting to events subsequent to the last written communication of July 9, 2004. The affidavit of Biosig's Canadian counsel clearly establishes that there was a constant stream of communication with Cybex's counsel, that the parties spoke several times, that he had been informed that Cybex wished to keep communications open and continue talking and that at no point in time was it indicated that negotiations had broken down. Mrejen Aff. ¶9, ¶10, ¶12, ¶16. Indeed, it was because of ongoing negotiations that Cybex managed to escape suit. Mrejen Aff ¶13-14 & HS Decl. ¶20-21. Of further note is the declaration of Cybex's own Vice-President that

makes no assertion of invalidity, no assertion of non-infringement and no assertion to the effect that negotiations had broken down but only asserts that Biosig was "being unreasonable". HS Decl., Exhibit B, ¶4. This, apparently, was a view that he never communicated to Biosig.  Viewed as a totality, the documentary evidence, the affidavit of Biosig's Canadian counsel and the declaration of Cybex's Vice-President clearly reveal that Cybex's filing amounted to little more than a legal ambush perpetrated for the purpose of enhancing Cybex's bargaining power in negotiations, securing its preferred forum and obliging Biosig to dissipate its limited resources by litigating substantially the same issues against two parties, The Nautilus Group and Cybex, in two different forums.

When presented with such inequitable conduct, courts have either refused to exercise their discretionary jurisdiction or have transferred the case to the defendant's preferred venue.  In EMC, 89. F.3d 807 the Court of Appeals declined to overturn a lower court's decision to not exercise jurisdiction, noting the lower court's observation that a party could abuse the declaratory judgment to obtain a more favorable bargaining position in its ongoing negotiations with a patentee and noting that the plaintiff had not produced any evidence to the effect that the patentee had participated in negotiations to keep the plaintiff from seeking declaratory relief. In circumstances analogous to those presented in the instant matter the Court declined to exercise its discretionary jurisdiction where the declaratory judgment defendant responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by the plaintiff. Davox Corporation v. Digital Systems International, 846 F.Supp. 144, 148 (D. Mass. 1993).  In Davox there may have been some ambiguity ("perhaps misled") about the defendant having been misled.

However, in the instant matter there is no such ambiguity as Biosig's Canadian counsel was explicitly told that Cybex wished to keep talking (Mrejen Aff. ¶12). Succinctly put, the general trend of precedent is that when a party makes a good faith effort to settle a case out of court, courts encourage such efforts and look disfavorably on a party seeking to take advantage of such a plaintiff. Symbol Technologies v. Quantum Associates , 2002 WL 225934, *3  (D.Mass 2002). Cybex clearly took advantage of Biosig's good faith efforts and the equities of the situation dictate that this action should be dismissed.

**(2) The Balance of Convenience Favors Dismissal or Transfer of the Action**

Dismissal of a first filed action may be predicated upon the convenience of the parties. Genentech, 998 F.2d 931. The factors for dismissal are similar to those of a motion to transfer for convenience under 28 U.S.C. § 1404(a).  Biosig seeks dismissal or, in the alternative, transfer of the action to the United States District Court for the Southern District of New York .

The following factors are weighed in deciding a motion to transfer (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of the operative facts and relative ease of access to the sources of proof; (5) attendance of witnesses; (7) calendar congestion; (8) the desirability of having case tried by forum familiar with substantive law to be applied; (9) any practical difficulties; (10) and how best to serve the interests of justice. Pixel Enhancement Laboratories v. McGee 1998 WL 518187 *3 (D. Mass 1998).

Preliminarily, any balance of convenience of analysis should take into account two significant and weighty factors. Firstly, the pendency of an action before the United States District Court for the Southern District of New York against another party, The

Nautilus Group, alleging infringement of the same patent that is the subject of the pending action before this court. Decl. HS, Exhibit O. Secondly, the presence of a forum selection clause in a confidentiality agreement the breach thereof which forms the basis for Biosig's breach of contract cause of action against Cybex in Biosig's pending New York action. Decl. HS, Exhibit D, Section 8.

The complaint against The Nautilus Group was filed on August 16, 2004. The complaint was served on August 17, 2004. Decl. HS, Exhibit Q. Both the filing date of the complaint and date of service of the summons and complaint are prior to the filing date of Cybex's declaratory judgment complaint against Biosig and, as such, Biosig cannot be accused of having filed a second suit for the purpose of manufacturing a pretext to consolidate cases before the United States District Court for the Southern District of New York. The cases have been deemed related and are both pending before the Honorable Richard Owen, U.S.D.J.

The forum selection clause is contained in a confidentiality agreement signed between Biosig and Cybex and provides that the agreement shall be governed and construed as a contract made in New York according to the laws of New York and that each party shall submit to the jurisdiction of New York courts, including Federal district courts located   in the state of New York. HS Decl., Exhibit D, Section 8. The agreement was signed by Biosig on August 26, 1996, was to be effective for a period of five years or until completion of the authorized purpose, whichever was the earlier and provided that certain obligations would survive the expiry or termination of the agreement. Biosig asserts that the agreement expired in 2001 and that Cybex has violated those obligations that are to survive the expiry or termination of the agreement.

Under New York law, the limitations period for breach of contract is six years (New York Civil Practice Law and Rules §213), thus Biosig's breach of contract cause of action is, prima facie, not time-barred. Notwithstanding Cybex's attempts to minimize the importance of this agreement it, along with the issue of infringement, has been repeatedly brought to the attention of Cybex during the entire course of Biosig's interaction with Cybex. SEE LETTERS. HS. Decl, Exhibit F, G, I, K, M. The Supreme Court has held that courts should enforce a forum selection clause in a contract unless the objecting party can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). Additionally, with respect to a motion to transfer under 28 U.S.C. § 1404(a) the presence of a forum selection clause is a significant factor that figures centrally in the district court's calculus. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239.

All the factors weighed in deciding a motion to transfer do not favor Biosig. Biosig concedes that certain factors are neutral, notably, calendar congestion (factor 7), the locus of operative facts and the relative ease of access to the sources of proof (factor 4), the attendance of witnesses (factor 5) and practical difficulties (factor 9) while the remaining factors, to various degrees, favor transfer.

Relative to the convenience of the parties (factor 1) and the convenience of witnesses (factor 2), Cybex would undoubtedly suffer some minor inconvenience from having its party and non-party witnesses appear in New York but such inconvenience could substantially be remedied by requesting that they be deposed in Massachusetts. However, obliging a small company such as Biosig to have its party and non-party

18

witnesses appear in both New York and Boston would be highly inconvenient given the more efficient alternative of co-ordinating their appearance in New York for the purposes of both pending actions in New York, thus realizing considerable savings in time and money.

Relative to the means of the parties (factor 3), Cybex is a publicly traded company with sales in excess of 83 million dollars and over 70 distributors in the United States as well an office in the United Kingdom and an international presence with 61 independent distributors in 65 countries. Biosig is a small privately owned firm with one office in Montreal. Clearly, this factor heavily favors Biosig.

Relative to the desirability of having case tried by a forum familiar with the applicable substantive law (factor 8) this factor is indifferent as it pertains to patent issues but, as it pertains to Biosig's breach of contract claim, favors transfer to the Southern District of New York. The contract is to be governed and construed in light of New York law. A court in the Southern District of New York would be best placed to construe such an agreement, thus relieving this Court of the need to unnecessarily devote scarce resources to familiarize itself with the law of another jurisdiction.

The final factor, the interests of justice (factor 10) weighs heavily in favor of Biosig. A sound reason to discontinue the first-filed action is the opportunity to consolidate related litigation (Genentech, 998 F.2d 931, 937). To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that 28 U.S.C. § 1404(a) was designed to correct Ferens v. John Deere Co., 494 U.S. 516, 531 110 S. Ct. 1274, 1284 (1990) quotation omitted. While consolidation of the actions has not been

requested there is no requirement that consolidation be certain before a court can consider that a related action is pending in the proposed transferee court. <u>Fairfax Dental Ltd. v. S.J. Filhol Ltd.</u>, 645 F.Supp. 89, 92 (E.D.N.Y. 1986). Given the nature of patent litigation substantial judicial economies would be realized by either dismissing the instant action or transferring it to the Southern District of New York.

**III. Conclusion**

For the foregoing reasons, plaintiff's action should be dismissed or, alternatively, transferred to the United States District Court for the Southern District of New York.

CERTIFICATION UNDER L.R. 7.1(a)(2)

The undersigned certifies that Biosig's counsel conferred with counsel for Cybex by telephone on October 22, 2004, in a good faith attempt to narrow or resolve the issues raised in this motion and that Cybex's counsel indicated that they did not assent to the present motion.

Dated:        October 28, 2004            BIOSIG INSTRUMENTS, INC.

By its attorneys

_____
Humayun Siddiqi (pro hac vice pending)
LAW OFFICES OF ZAFAR A. SIDDIQI
11 Broadway, Suite 853
New York, NY 10004
Tel. (212) 514-5900
Fax (212) 514-5005


Edward Foye (B.B.O. 562375)
Todd & Weld LLP
28 State Street
Boston, MA 02109
Tel. (617) 624-4756
Fax. (617) 227-5777