IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYBEX INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>BIOSIG INSTRUMENTS, INC.<br><br>Defendant. | Civil Action No. 04-11846DPW<br><br>AFFIDAVIT IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR TRANSFER |

## AFFIDAVIT OF DAVID MREJEN
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR TRANSFER

I, David Mrejen, attorney, having my place of business at 5603 Castlewood, Montreal, Quebec, solemnly declare and state as follows:

1. I am legal counsel, in Canada, to the Defendant Biosig Instruments, Inc. ("Biosig").

2. On or about March 3, 2004, I sent a letter to Plaintiff Cybex International Inc. ("Cybex"), informing them that they are infringing both Biosig's United States Patent 5,337,753 and Canadian Patent 2,033,014. I also informed them of the existence of a non-disclosure agreement that Cybex had entered into with Biosig.

3. In or about March of 2004, I received a letter dated March 25, 2004 from David E. De Lorenzi, Esq. of the firm Gibbons, Del, Deo, Nolan, Griffinger and Vecchionne, P.C., counsel for Cybex, requesting certain information relative to identifying which products of Cybex were infringing and the contents of the confidentiality agreement that had been entered into between Cybex and Biosig.

4. On or about April 20, 2004, I responded to Mr. De Lorenzi's letter.

5. On or about July 9, 2004, I detailed, with particularity, the equipment produced by Cybex which Biosig believed was infringing its patents and the terms on which Biosig would consider, without prejudice, to accept to settle the matter.

6. Subsequent to my letter of July 9, 2004 and prior to August 25, 2004 I had several telephone conversations with Mr. De Lorenzi during which we exchanged information for the purpose of determining the parameters of a settlement agreement acceptable to both parties.

7.      During the telephone conversations that took place subsequent to July 9, 2004 and prior to August 25, 2004, Mr. De Lorenzi informed me that his client would verify the past unit sales figures of the allegedly infringing units and thereafter he provided me with certain unit sales figures which I disputed.

8.      During our telephone conversations that took place subsequent to July 9, 2004 and prior to August 25, 2004, Mr. De Lorenzi and I discussed compensation for past infringement and I proposed that prior to continuing negotiations he determine whether or not Cybex was interested in obtaining a license for future sales.

9.      Subsequent to my letter of July 9, 2004 and prior to August 25, 2004, there was a constant stream of communication between myself and Mr. De Lorenzi and, when Mr. De Lorenzi was not available, his assistant.

10.     Subsequent to my letter of July 9, 2004 and prior to August 25, 2004, I was contacted several times by Mr. De Lorenzi's assistant to schedule telephone calls or to inform me that Mr. De Lorenzi was out of the office on business or vacation.

11.     In or about the month of August, 2004, after failing to receive a response relative to Cybex's willingness to obtain a license for future sales, I contacted Mr. De Lorenzi and discussed with him, yet again, Biosig's desire to know whether Cybex was interested in obtaining a license for future sales, barring which Biosig would pursue its options by taking legal action.

12.     Subsequent to this conversation I had another telephone conversation with Mr. De Lorenzi and emphasized that Biosig immediately required an answer and he responded that Cybex had instructed him to keep communications open with Biosig and to continue talking.

13.     Based on such communications from Cybex's counsel and the belief that good faith negotiations were ongoing, Biosig did not institute legal proceedings against Cybex.

14.     During the months preceding and months during which my talks with Mr. De Lorenzi progressed, I had many talks with Humayun Siddiqi of the Law Offices of Zafar Siddiqi as to the possibility of Biosig instituting litigation in the United States. We discussed the possibility of instituting suits on behalf of Biosig against both The Nautilus Group ("Nautilus") and Cybex for infringement of Biosig's United States Patent 5,337,753. I mentioned to Mr. Siddiqi that I was, however, in negotiations with Cybex and that there was possibly a chance to settle. It was therefore decided to institute proceedings only against Nautilus for the time being, holding off on instituting proceedings against Cybex pending the outcome of settlement discussions with same.

15.     Upon information and belief the action against Nautilus was filed on August 17, 2004 and served August 18, 2004.

16.     At no point during my telephone conversations with Mr. De Lorenzi subsequent to my letter of July 9, 2004 and prior to August 25, 2004 was I told that Cybex wished to terminate settlement discussions and negotiations.

17.   During our communications, I did set deadlines for the purpose of determining whether Cybex was serious about settlement negotiations and though the deadlines not always met to the exact day, given the positive feedback received from Cybex's counsel, Biosig refrained from instituting an action against Cybex.

18. On or about August 25, 2004, I was contacted by Mr. De Lorenzi and he informed me that Cybex had filed an action in the District of Massachusetts seeking a declaratory judgment of non-infringement and invalidity.

19.   I declare that all of the facts alleged herein are true and exact and are solemnly sworn before a Commissioner for Oaths, duly authorized to receive sworn statements in accordance with Quebec law.

October 25, 2004

_____
DAVID MREJEN, attorney
Montreal, Quebec

_____
Commissioner for Oaths for the District
of Montreal, Province of Quebec