## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CYBEX INTERNATIONAL, INC.,

               Plaintiff,

vs.

BIOSIG INSTRUMENTS, INC.,
               Defendant.

Civil Action No.  04 11846 (DPW)

**ELECTRONICALLY FILED**

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER

---

Mark P. Kronfeld (BBO # 630830)
David E. De Lorenzi (Pro Hac Vice Pending)
Michael Cukor (Pro Hac Vice Pending)
**GIBBONS, DEL DEO, DOLAN,**
**GRIFFINGER & VECCHIONE, P.C.**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey  07102-5497
(973) 596-4500
(973) 596-0545 Facsimile
Attorneys for Plaintiff
Cybex International, Inc.

## <u>TABLE OF CONTENTS</u>

**Page**

**TABLE OF AUTHORITIES**........................................................................II

**PRELIMINARY STATEMENT**..................................................................1

**BACKGROUND**....................................................................................3

**ARGUMENT**........................................................................................6

    **A.**    **This Court May Exercise Personal Jurisdiction Over Biosig**........6

        **1.**    **Massachusetts's Long-Arm Statute Permits Service on Biosig**........7

        **2.**    **Exercising Personal Jurisdiction Over Biosig  Does Not Violate Due Process**........8

            **a.**    **Biosig Purposefully Directed its Activities at This Forum**........8

            **b.**    **Cybex's Claim Arises Out of or Relates to Biosig's Forum Activities**........9

            **c.**    **Exercising Jurisdiction Over Biosig is Reasonable and Fair**........10

    **B.**    **This Court Should Not Dismiss or Transfer This Action**........11

        **1.**    **Cybex's Suit is Not Anticipatory**........12

        **2.**    **The Balance of Factors Urges Against Dismissal or Transfer**........14

    **C.**    **There is No Enforceable Forum Selection Clause**........17

    **D.**    **Alternatively, Cybex Requests Leave to Conduct Expedited  Limited Discovery on the Issue of Personal Jurisdiction**........18

**CONCLUSION**........................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

<u>B & J Mfg. Co. v. Solar Indus., Inc.</u>,
483 F.2d 594 (8th Cir. 1973) ................................................................................. 7

<u>Barrett v. Lombardi</u>,
239 F.3d 23 (1st Cir. 2001) ................................................................................. 19

<u>Bristol-Meyers Squibb Co. v. Andrx Pharmaceuticals, LLC</u>,
2003 WL 22888804 (S.D.N.Y. Dec. 5, 2003) .................................................... 16

<u>Chicago Ins. Co. v. Holzer</u>,
2000 WL 777907 (S.D.N.Y. June 16, 2000) ...................................................... 12

<u>Chisso America, Inc. v. M/V Hanjin Osaka</u>,
307 F.Supp.2d 621 (D.N.J. 2003) ...................................................................... 18

<u>Der-Tex Corp</u> ............................................................................................................ 8

<u>Der-Tex Corp. v. Thatcher</u>,
815 F. Supp. 41 (D. Mass. 1993) ......................................................................... 7

<u>Electronics For Imaging, Inc. v. Coyle</u>,
240 F.3d 1344 (Fed. Cir. 2003) ......................................................................... 10

<u>EMC Corp. v. Norand Corp.</u>,
89 F.3d 807 (Fed. Cir. 1996),
<u>cert</u>. <u>denied</u>, 519 U.S. 1101 (1997) .............................................................. 13, 14

<u>Federal Ins. Co. v. May Dep't Stores Co.</u>,
808 F. Supp. 347 (S.D.N.Y. 1992) .................................................................... 12

<u>Findwhat.com v. Overture Servs., Inc.</u>,
2003 WL 402649 (S.D.N.Y. Feb, 21, 2003) ...................................................... 12

<u>Florens Container v. Cho Yang Shipping</u>,
245 F.Supp.2d 1086 (N.D. Cal. 2002) ............................................................... 15

<u>Genentech v. Eli Lilly & Co.</u>,
998 F.2d 931 (Fed. Cir. 1993) ........................................................................... 11

<u>Genetic Implant Systs., Inc. v. Core-Vent Corp.</u>,
123 F.3d 1455 (Fed. Cir. 1997) ........................................................................... 8

<u>I Create Int'l., Inc. v. Mattel, Inc</u>,
2004 WL 1774250 (S.D.N.Y. Aug. 9, 2004) ..................................................... 16

#799932 v3
104480-51322

In re Lupron® Marketing and Sales Practices Litigation,
    245 F.Supp.2d 280 (D. Mass. 2003) ...................................................................... 19

Inamed Corp. v. Kuzmak,
    249 F.3d 1356 (Fed. Cir. 2001) ............................................................................... 9

John Boutari & Son, Wines & Sprits, S.A. v. Attiki Importers & Distribs.,
    Inc.,
    22 F.3d 51 (2d Cir. 1994) ......................................................................................... 18

Mattel, Inc. v. Procount Business Servs.,
    2004 WL 502190 (S.D.N.Y. March 10, 2004) ...................................................... 15

Milford Power Ltd. Part. v. New England Power Co.,
    918 F. Supp. 471 (D. Mass. 1996) .......................................................................... 11

Nova Biomed. Corp. v. Moller,
    629 F.2d 190 (1st Cir. 1980) ....................................................................... 7, 8, 11, 17

Nowak v. Tak How Investments, Ltd.,
    94 F.3d 708 (1st Cir. 1996) ....................................................................................... 19

Orion Elec. Co., Ltd. v. Funai Elec. Co., Ltd.,
    2002 WL 377541 (S.D.N.Y. Mar. 11, 2002) ...................................................... 6, 14

PDK Labs, Inc. v. Friedlander,
    103 F.3d 1105 (2d Cir. 1997) ................................................................................... 10

Pharmaceutical Resources, Inc. v. Alpharma USPD Inc.,
    2002 WL 987299 (S.D.N.Y. May 13, 2002) ......................................................... 12

Pixel Enhancement Labs. v. McGee,
    1998 WL 518187 (D. Mass. Aug. 5, 1998) ........................................................... 15

Princess House, Inc. v. Lindsey,
    136 F.R.D. 16 (D. Mass. 1991) ......................................................................... 15, 17

Royal Ins. Co. v. Tower Records, Inc.,
    2002 WL 31385815 (S.D.N.Y. Oct. 22, 2002) .................................................... 15

Schnabel v. Ramsey Quantitative Systs., Inc.,
    322 F.Supp.2d 505 (S.D.N.Y. 2004) ...................................................................... 12

Silent Drive, Inc. v. Strong Indus., Inc.,
    326 F.3d 1194 (Fed. Cir. 2003) .............................................................................. 8, 9

Sunview Condominium Ass'n v. Flexel Int'l, Ltd.,
    116 F.3d 962 (1st Cir. 1997) ..................................................................................... 19

#799932 v3
104480-51322

Symbol Techs. v. Quantum Assocs.,
   2002 WL 225934 (D. Mass. Jan. 30, 2002) .................................................................. 14

Szafarowicz v. Gotterup,
   68 F.Supp.2d 38 (D. Mass. 1999) ............................................................................. 19

**Statutes**

28 U.S.C. § 1404 .......................................................................................................... 1, 2, 14

28 U.S.C. § 1404(a) ............................................................................................................. 1

**Other Authorities**

Mass Gen. L. ch. 233A § 3 ................................................................................................... 7

**Treatises**

A Treatise on the Law of Contracts,
   Forms § 15F22 ...................................................................................................... 18

#799932 v3
104480-51322

**PRELIMINARY STATEMENT**

Plaintiff, Cybex International, Inc. ("Cybex"), respectfully submits this memorandum of law in opposition to the motion of defendant, Biosig Instruments, Inc. ("Biosig"), to: (a) dismiss this action for lack of personal jurisdiction over Biosig, and because this action is an improper anticipatory filing; or (b) transfer this action to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

Cybex filed the instant action to end Biosig's five-year campaign to force a patent license onto Cybex, during which Biosig repeatedly threatened to file suit but never did. The evidence shows that Biosig would have continued its threat campaign, without ever filing suit, had Cybex not filed this action to establish some business certainty and free itself and its suppliers from Biosig's relentless threats. In fact Biosig waited until two days *after* Cybex informed Biosig of this action, until it "in turn" filed a patent infringement action in the Southern District of New York, the hometown of its newest counsel. The New York action is a classical example of the "knee jerk" retaliatory filing common to all defendants that would rather be plaintiffs.

Cybex has its principal place of business in Medway, Massachusetts. Its manufacturing facility for the accused devices is located in Medway. All of Cybex's personnel with any connection to the manufacture or sale of the accused infringing devices or with any knowledge of the prior relationship between Cybex and Biosig are located in Massachusetts. The same is true for all documents and other tangible evidence regarding the accused infringing devices.

Biosig is a Canadian corporation located in Lachine, Quebec, and Biosig's witnesses and evidence are located in Canada. The only known present connection between Biosig and the Southern District of New York is Biosig's litigation counsel, whose office is in Manhattan. None of the events in dispute occurred in New York and no evidence or witnesses required to resolve this dispute are in New York. Transferring this action to New York makes no sense.

This Court may exercise jurisdiction over Biosig, as a result of the combination of Biosig's repeated telephone and written allegations of patent infringement, its purported efforts

to negotiate a license with Cybex, its unfulfilled threats of litigation, and its sales and advertising in Massachusetts. Viewed in the aggregate, Biosig's Massachusetts business transactions subject it to this Court's jurisdiction under the commonwealth's long-arm statute.

Exercising jurisdiction over Biosig is also completely consistent with due process. Biosig purposefully transacted business in this forum, and Cybex's claims arises out of or are related to Biosig's conduct. Accordingly, the exercise of jurisdiction is reasonable and fair. Biosig has not shown otherwise.

Additionally, this first-filed action is not an anticipatory filing, nor does any special circumstance exist that would justify dismissing it. Biosig's threats of litigation either contained deadlines that had long passed or were merely general threats of future litigation where no deadline or forum was mentioned. Cybex did not race into this Court to beat Biosig to the courthouse. Instead, at the time this suit was filed, all of the evidence suggests that Biosig was no closer to filing suit than it was five years ago. The declaratory judgment action was designed for situations like this -- so plaintiff's like Cybex could achieve business certainty without having to wait for defendants like Biosig to decide to follow through on any one of its five year old threats of suit.

Finally, the relevant factors under 28 U.S.C. § 1404 urge against dismissal or transfer. This forum clearly is more convenient to Cybex, and there is no advantage to Biosig in either district. All of Cybex's employees/witnesses are in this district; there are no witnesses or evidence in New York. The locus of operative facts and sources of proof all are in Massachusetts. And Massachusetts has an undeniable interest in providing a forum for its residents accused or patent infringement. Biosig's motion should be denied.

Alternatively, Cybex requests that a ruling on the motion be stayed so that Cybex may conduct expedited limited discovery relating to the extent of Biosig's Massachusetts contacts, to establish personal jurisdiction here. Biosig has admitted sales into Massachusetts but has not divulged the amount thereof. Additionally, Cybex's independent research has revealed that

#799932 v3
104480-51322

Biosig has placed advertisements in the November 2004 issue of at least one Massachusetts based publication. Accordingly, expedited discovery limited to the issue of personal jurisdiction over Biosig is warranted if the Court is inclined to grant Biosig's motion, in that Biosig's contacts with the forum could be much more significant than have been disclosed.

## **BACKGROUND**

Cybex manufactures strength and cardiovascular fitness and exercise equipment for the commercial and consumer markets. Declaration of Raymond Giannelli ("RG Decl."), ¶ 4. In addition to its Massachusetts headquarters and manufacturing plant, Cybex has facilities in Owatonna, Minnesota; Portland, Oregon; and the United Kingdom. Id. ¶ 2.

In 1996, Cybex began to purchase heart rate monitor devices from Biosig for installation into Cybex's exercise equipment. Id. ¶ 9. At that time, Cybex and Biosig entered into a Confidentiality Agreement. See Declaration of David E. De Lorenzi ("DED Decl."), Ex. A.

In 1997, Cybex merged with Trotter, Inc., of Medway, Massachusetts. RG Decl., ¶ 7. At that time, all operations, records and personnel were moved completely out of New York and into Massachusetts. Id. ¶ 7.[1] The merger with Trotter exposed Cybex to additional suppliers and Cybex eventually made a business decision to purchase its heart rate monitors from other suppliers. The last shipment of Biosig heart rate monitors was received by Cybex at Medway, Massachusetts in 1998.[2] Id. ¶ 10.

The Confidentiality Agreement expired on the date of the last shipment in 1998. Id. ¶ 11. The absolute latest date the Confidentiality Agreement could have expired is August 27, 2001, five years after its execution.

---

[1]     The only exception was a small satellite research and development office with less than five employees located in Hauppauge. This office closed in 1998. Id.

[2]     During the course of this litigation defendant has produced a Biosig invoice dated February 25, 2000 showing a shipment of 250 *sensors* to Cybex. Biosig memorandum ("BM") at Ex. E  Cybex has not confirmed that those sensors were ordered or shipped.

#799932 v3
104480-51322

The true gravamen of this dispute is that Cybex was able to find a better source for heart rate monitors.  In response to Cybex having made that business decision, for the past <u>five (5) years</u>, Biosig has pursued a campaign of "patent infringement" harassment against Cybex and its new suppliers throughout the fitness equipment industry, attempting to force a patent license.

Biosig began telephoning Cybex and sending repeated infringement threat letters to Cybex, <u>in Massachusetts</u>, in April 1999.  <u>See</u> DED Decl. Exs. B, C.[3]  After Cybex responded to Biosig's threats, <u>id.</u> Ex. D, Biosig was silent, (falsely) giving Cybex the impression that the matter was resolved .

Biosig launched the "second wave" of its patent infringement harassment campaign against Cybex in March 2001, setting a deadline for a response by April 18, 2001.  <u>Id.</u> Ex. E.  Once again, Cybex was forced to respond to Biosig's threats by explaining why Biosig's claims were baseless  <u>Id.</u> Ex. F.  Biosig's threatened deadline again passed without any lawsuit being filed, giving Cybex the false impression that the matter was resolved.

Three (3) years passed before Biosig's "third wave" in its ongoing campaign.[4]  On March 1, 2004, Biosig, this time through its Canadian counsel, wrote again to Cybex (again, <u>in Massachusetts</u>), again accusing Cybex of patent infringement and threatening litigation if Cybex did not take a license.  <u>Id.</u>, Ex. G.  The March 1, 2004 letter discussed other companies which, it claims, were cowed by the threat of a patent suit by Biosig, and gave Cybex five days to indicate its interest in a license.  The letter closed:  "Failure to either cease or desist from your company's infringing activities or to negotiate a fair and equitable license agreement will lead to the institution of proceedings."

---

[3]    In light of Biosig's threat letters to Cybex, in Massachusetts, in 1999, 2001 and 2004, Biosig's assertion that its sole Massachusetts contacts are ads in national trade journals distributed therein, is clearly false.  (BM 2).

[4]    Biosig's assertion that its 2004 letter-writing campaign resulted from its being "[d]etermined to finally resolve its outstanding issues with Cybex through either negotiation or legal channels," as "a last ditch effort," is trumped by the three-year gap between its 2001 and 2004 letters.  (BM at 4).  Biosig could just as easily claim that its next, future, round of threats will be when it decides to finally resolve its issues with Cybex.

#799932 v3
104480-51322

Of course, Cybex did not capitulate within the five-day window.  Cybex was forced to explain to Biosig's newest counsel why Biosig's claims were baseless and to try again to resolve the matter so that Biosig would cease its harassment.  To that end, Cybex's counsel responded on March 25, 2004, seeking further details of Biosig's newest round of accusations.  Id., Ex. H.  Biosig refused to provide the requested information, and again threatened litigation if its demands were not met.  Id., Ex. I.  This time, Biosig's counsel required a response within two weeks "failing which our client will institute legal proceedings without any further notice or delay."  Id.  Once again, Biosig's feigned deadline passed without any lawsuit.

On July 9, 2004, Biosig's Canadian counsel wrote setting forth a list of allegedly infringing Cybex products.  Id., Ex. J.  Biosig demanded a response within 5 days, or threatened legal action "without any further notice or delay."  Id. at 2.  Once again, Biosig's deadline passed without any lawsuit.  Although counsel spoke over those next few weeks regarding the professed merits of Biosig's claims, it became clear that Biosig simply would not be reasonable.  DED Decl., ¶ 13; RG Decl, ¶ 19.[5]  It became equally clear that Biosig's five-year campaign to force a license from Cybex would continue unless Cybex took legal action of its own.

On August 24, 2004, more than a month after Biosig's latest threatened deadline had passed, Cybex filed its complaint in this action.  As a professional courtesy, Cybex's counsel telephoned Biosig's Canadian counsel the following day to advise of Cybex's filing and to ask if Biosig's counsel would accept service of the Summons and Complaint.  DED Decl., ¶ 14.  Two (2) days later, Biosig's newest counsel, whose office is in New York City, filed the action in the Southern District of New York.  See Declaration of Humayun Siddiqi in support of defendant's motion ("HS Decl.") Ex. P.  On the day that action was filed, Biosig's New York counsel left a voicemail with Cybex's counsel confirming that Biosig filed the Southern District action only in

---

[5]     Biosig's claim that its Canadian counsel was not told that Cybex wished to terminate negotiations or discussions, is worthless in the face of Biosig's unrelenting series of litigation threats in the absence of a license by Cybex.  (BM at 5; cf. supra, and DED Decl. ¶ 13).

#799932 v3
104480-51322

reaction to Cybex's filing in the District of Massachusetts, and, moreover, that Biosig had no genuine intention of otherwise filing suit against Cybex, and that Biosig likely would have continued its patent infringement harassment campaign against Cybex indefinitely without ever filing suit. Specifically, Biosig's counsel stated:

> My name is [Name of counsel for Biosig], it has come to my attention that on Tuesday you filed a declaratory judgment action for non-infringement and possibly invalidity. <u>In turn,</u> we were instructed by our client to file for patent infringement/breach of contract and unfair competition and we did so on Thursday.

DED Decl., Ex. K (emphasis added).[6]

While Biosig was placing telephone calls and sending threatening letter to Cybex in Massachusetts, it was also selling products. In fact, Biosig does not deny that it currently sells products into Massachusetts. Biosig also currently advertises in Massachusetts based publications, DED Decl. Ex. L, and maintains a website designed to accept orders from Massachusetts residents. DED Decl. Ex. M.

## ARGUMENT

### A.    This Court May Exercise Personal Jurisdiction Over Biosig

Biosig, upset that Cybex found another source for heart rate monitors, deliberately pursued a continuous campaign of communications, beginning in 1999, to Cybex in Massachusetts, all directed to trying to force a patent license onto Cybex. Biosig has also sold products into Massachusetts, advertised in national publications that were distributed in Massachusetts, advertised in Massachusetts based publications, and maintained a web site designed to accept sales of products allegedly covered by the patent-in-suit from Massachusetts residents. The impact of Biosig's campaign on Cybex's operations and its business relationships with its suppliers is also felt in Massachusetts. As a result, the exercise

---

[6]    Biosig's subsequent claim that it was "blindsided" by Cybex's filing of this action is absurd, in light of Biosig's protracted and potentially endless campaign of patent infringement harassment against Cybex. (BM at 5). See <u>Orion Elec. Co., Ltd. v. Funai Elec. Co., Ltd.</u>, 2002 WL 377541 *5 (S.D.N.Y. Mar. 11, 2002).

6

of personal jurisdiction over Biosig is proper under the Massachusetts long-arm statute, and comports with due process.

### 1.    Massachusetts's Long-Arm Statute Permits Service on Biosig

The Massachusetts long-arm statute permits the exercise of jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's, inter alia: (i) transacting any business in the commonwealth; or (ii) contracting to supply services or things in the commonwealth.  (Mass Gen. L. ch. 233A § 3).  Biosig's five-year deliberate campaign to coerce a license from Cybex (including its numerous telephone calls into the commonwealth) combined with its prior sales to Cybex in Massachusetts, its current advertising in Massachusetts based publications, its current targeting of Massachusetts customers through its web site, and its persistent threats of litigation, constitute sufficient transaction of business in Massachusetts to subject it to this Court's jurisdiction.  See Der-Tex Corp. v. Thatcher, 815 F. Supp. 41 (D. Mass. 1993) (telephone calls charging infringement and sales of other products in the forum were sufficient to establish jurisdiction); B & J Mfg. Co. v. Solar Indus., Inc., 483 F.2d 594, 597 (8th Cir. 1973) (infringement letters and advertising in national publications distributed in the forum, and sales of other products in the forum were sufficient to establish jurisdiction); Nova Biomed. Corp. v. Moller, 629 F.2d 190 (1st Cir. 1980).

Biosig's claim that the only jurisdictional basis is its 2004 cease and desist letters to Cybex, ignores all of Biosig's other contacts with Massachusetts and ignores that those letters are only the most recent part of Biosig's five-year campaign to force Cybex to take a license under the suit patent.  (BM at 7, 8).  In fact, Biosig admits transacting business in Massachusetts in February 2000, but then mysteriously asserts that it had concluded its Massachusetts business activities "before Biosig's first cease and desist letter was sent in March 2004."  (BM at 11).  Biosig conveniently ignores both its April 30, 1999 and its May 20,

#799932 v3
104480-51322

1999 letters to Cybex that both charge Cybex with infringement and predate Biosig's February

2000 invoice.[7] [8]

### 2. Exercising Personal Jurisdiction Over Biosig Does Not Violate Due Process[9]

Asserting personal jurisdiction over Biosig does not violate the minimum contacts test for

determining whether asserting jurisdiction comports with due process.  Genetic Implant Systs.,

Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997).  Cybex has made a prima facie

showing that Biosig purposefully directed its activities at forum residents, and that Cybex's

claims here arise out of or relate to those activities.  And, in light of the totality of the

circumstances, the exercise of personal jurisdiction over Biosig is reasonable and fair.

#### a. Biosig Purposefully Directed its Activities at This Forum

Biosig's Massachusetts sales, Massachusetts advertising and five-year campaign to

coerce a patent license out of Cybex, is more than sufficient to constitute activity purposefully

directed at the forum.  See, e.g., Der-Tex Corp, 815 F. Supp. 41; Nova Biomed., 629 F.2d 190;

---

[7]     Biosig's argument that the 1999 letter is insufficient to create a reasonable apprehension of litigation, ignores that Cybex's reasonable apprehension is based on the entire five-year course of correspondence, and particularly the numerous 2004 letters, each with a threatened litigation deadline.  (BM at 7).  See EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996), cert. denied, 519 U.S. 1101 (1997).  Biosig's claim that the 2001 letter, including a license offer, cannot establish the predicate for declaratory judgment jurisdiction, ignores that the letter also refers to infringement and expressly refers to the prior (i.e., 1999) correspondence, which contained infringement allegations. (BM at 7; cf. DED Decl. Ex. E).

[8]     Biosig's argument that jurisdiction under the long arm statute requires "significantly more than warning letters," mischaracterizes the decision in Nova Biomed. Corp. v. Moller, 629 F.2d 190 (1st Cir. 1980). (BM at 8).  The Nova court held: "What we do hold is that such conduct [sending threatening infringement letters into the forum district] can, in certain circumstances, constitute the transaction of business within the meaning of the Massachusetts long arm statute."  629 F.3d at 197.

[9]     This Court may exercise specific personal jurisdiction over Biosig.  "Where, as here, a cause of action is alleged to arise directly out of the [defendant's] contacts within the forum state, 'less is required to support jurisdiction than when the cause of action is unrelated to those contacts.'"  Milford Power Ltd. Part. v. New England Power Co., 918 F. Supp. 471, 480 (D. Mass. 1996), cit. omit., quot. omit.  Specific personal jurisdiction may be asserted "even if the defendant's contacts [with the forum] are 'isolated and sporadic.'"  Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003), cit. omit., quot. omit.

#799932 v3
104480-51322

Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001).  Biosig's argument that cease and desist letters do not suffice to support jurisdiction over an out-of-state patentee, ignores the full nature of its activities in Massachusetts.  Biosig's admits that it conducted business in Massachusetts in February 2000, it does not deny that it has ongoing sales (of the products allegedly covered by the patent in suit) to third parties in Massachusetts, it maintains a website that is designed to accept orders for those products from Massachusetts residents, it advertised in the November 2004 edition of a Massachusetts based publication, it has repeatedly asserted patent infringement against Cybex in an attempt to force Cybex to take an unwanted license, and then repeatedly threatened to institute litigation if no license was taken.  Such extensive and continuous contacts with Massachusetts subject Biosig to the jurisdiction of this Court.[10]

      b.    Cybex's Claim Arises Out of or Relates to Biosig's Forum Activities

Based on the foregoing, it is clear that Cybex's declaratory judgment claims here arise directly out of and relate to Biosig's five-year campaign to force a license from Cybex, including threatening litigation.  Biosig's claim that its sole forum contact was sales to Cybex, ending no later than 2000, ignores the 2001 correspondence from Biosig's counsel, reiterating the 1999 patent infringement charges and offering a license. (BM at 11; DED Decl. Ex. E).  Similarly, the 2004 threat letters from Biosig's Canadian counsel expressly refer to the "previous correspondence" and Cybex's alleged "still continu[ing]" infringement, as well as the prior relationship with Cybex.  (DED Decl. Exs. G, I, J).  Biosig's forum activities from 1999 through 2004, all relate to alleged infringement by Cybex and an effort to force Cybex into an unwanted license.  There is no lack of a temporal overlap that would preclude finding that Cybex's claims arise out of Biosig's forum activities.  (BM at 11).

---

[10] Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194 (Fed. Cir. 2003), relied on by Biosig, is distinguishable.  (BM at 10-11).  This is not a case of a few letters plus a news release, impliedly threatening suit.  Rather, Biosig has, over the course of five years, has sold products and advertised in this venue and has repeatedly alleged infringement, repeatedly tried to force a license on Cybex, and in the end repeatedly threatened litigation.

#799932 v3
104480-51322

Biosig's campaign here is analogous to that in <u>PDK Labs, Inc. v. Friedlander</u>, 103 F.3d 1105 (2d Cir. 1997), where the defendant initiated "persistent, vexing communications" with the plaintiff re the parties' respective products.  The court stated that the "'apparent attempt to extort money from [plaintiff]'…at the very least appears to be [defendant's] strategy of intertwining legal threats with solicitation of investments in his product," holding that "[plaintiff's] cause of action…arises out of [defendant's] unique business transactions in [the forum]."  103 F.3d at 1109-10.  It is the same here.  Biosig's persistent, vexing communications with Cybex regarding alleged infringement and the demand for a license are an apparent attempt to extort money from Cybex, and at the very least represent Biosig's "strategy of intertwining legal threats with solicitation of" a license.  Cybex's claims, seeking a declaration of patent non-infringement and invalidity, arise out of Biosig's "unique business transactions" in this forum.[11]

              c.       Exercising Jurisdiction Over Biosig Is Reasonable and Fair

While Cybex must establish the first two prongs of the minimum contacts analysis, Biosig must prove that the exercise of jurisdiction here is unreasonable.  See <u>Electronics For Imaging, Inc. v. Coyle</u>, 240 F.3d 1344, 1350 (Fed. Cir. 2003).  There has been no showing by Biosig in this regard.  In any event, the exercise of jurisdiction here is reasonable and fair.

The third prong of the due process inquiry involves consideration of several factors to determine whether asserting jurisdiction is reasonable and comports with "fair play and substantial justice": (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5)

---

[11]      Biosig's claim of no dealings with Cybex for over 4½ years, precluding jurisdiction over Cybex's claims here, ignores that Biosig's March 2001 letter refers to the prior relationship between the parties, prior threats of infringement, and offers a license; and Biosig's March 1, 2004 letter refers to Biosig's prior letters and thus the threats of infringement.  (BM at 12; DED Decl. Exs. E, G).  Biosig's actions constitute an ongoing campaign, with the 1999, 2001 and 2004 letters directly related to each other, and directly related to Cybex's causes of action.

#799932 v3
104480-51322

the common interest of all sovereigns in promoting substantive social policies. Milford Power Ltd. Part. v. New England Power Co., 918 F. Supp. 471, 481 (D. Mass. 1996).

All of the factors support jurisdiction over Biosig here. Biosig's burden in appearing here is no greater than it is in the Southern District of New York. Also, Massachusetts's interest in adjudicating this dispute is clear: "Massachusetts has an undeniable interest in providing a forum for residents accused of patent infringement." Nova, 629 F.2d at 197 n3, cit. omit. Cybex's interest in obtaining convenient and effective relief also is clear: Cybex's facility, its documents, and its witnesses are all in this district. Similarly, the most effective resolution of the dispute between Cybex and Biosig is obtained by adjudicating that dispute in the forum with the greatest ease of access to sources of proof, i.e., Cybex's witnesses and documents.[12]

## B.    This Court Should Not Dismiss or Transfer This Action

Biosig acknowledges the general rule favoring a first-filed action, noting that there must be a sound reason that would make it unjust or inefficient to continue the first filed action. (BM at 12, 13). The first-filed rule's policy of preventing a multiplicity of lawsuits "is as valid for [a] declaratory action as any other." Genentech v. Eli Lilly & Co., 998 F.2d 931, 938 (Fed. Cir. 1993). Genentech also upheld the primacy of the first-filed declaratory action even though the later action was filed only one day later. "[T]he rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by reasons just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suit." Id.

Cases have disregarded the first-filed rule in patent cases where "special circumstances" are present, including when the choice of the forum of the first filed case was the result of pure forum shopping. Genentech, 998 F.2d at 938. Here, Cybex cannot be accused of forum-shopping. Cybex filed in its home district, and cases have routinely rejected any claim of

---

[12]    The final factor, common interest in promoting substantive social policies, is neutral.

#799932 v3
104480-51322

improper forum-shopping in this situation.  See, e.g., Schnabel v. Ramsey Quantitative Systs., Inc., 322 F.Supp.2d 505, 513-14 (S.D.N.Y. 2004) ("A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping.").

### 1.    Cybex's Suit is Not Anticipatory

Nor is Cybex's suit here properly dismissed as anticipatory.  Although courts have found a "special circumstance" justifying departure from the first-filed rule when the first-filed declaratory judgment action is an "improper anticipatory filing," Pharmaceutical Resources, Inc. v. Alpharma USPD Inc., 2002 WL 987299, *3 (S.D.N.Y. May 13, 2002), "district courts have often refused to characterize a suit as anticipatory where it is filed in response to a notice letter that does not explicitly inform [ ] a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit." Schnabel, 322 F.Supp.2d at 512, cit. omit., quot. omit. Additionally, cases finding an improper anticipatory filing based on a deadline in a cease and desist letter did so when the declaratory judgment action was filed before the deadline passed. See Federal Ins. Co. v. May Dep't Stores Co., 808 F. Supp. 347 (S.D.N.Y. 1992); Chicago Ins. Co. v. Holzer, 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000) (threat to sue in 48 hours met with anticipatory filing in 24 hours). In these cases, the declaratory judgment action literally "anticipated" the threatened action.[13]

When a declaratory action is filed after the threatened deadline(s) has (have) passed and the complaining party has failed to make good on its threats by filing, the accused party correctly perceives that a controversy exists, and possesses an objectively reasonable expectation that the accuser will file suit.  See Findwhat.com v. Overture Servs., Inc., 2003 WL 402649, *3 (S.D.N.Y. Feb, 21, 2003).  These two elements cannot trigger the anticipatory filing

---

[13]    Cybex has uncovered no case in which a declaratory action was found to be anticipatory, where the complaining party had repeatedly threatened to sue, set deadlines, and then let those deadlines pass without filing.

#799932 v3
104480-51322

exception -- they are the requirements under the law of the Federal Circuit before a declaratory judgment action may ever be filed in a patent case.  EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996), cert. denied, 519 U.S. 1101 (1997).  Since with each passed deadline, the accused party is less certain of when and if the threatened suit will be filed, the accused party's ultimate decision to file cannot be construed as a race to the courthouse.  EMC Corp. 89 F.3d at 811 ("But when the patentee takes steps that create a reasonable apprehension that he will seek redress through the courts, the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief.").

Biosig has been accusing Cybex and/or its suppliers of patent infringement, demanding licenses and threatening lawsuits since at least 1999.  Biosig's litigation plans have become even less predictable in 2004, and the cloud of Biosig's threats even more elusive.  On March 1, 2004, Biosig's counsel gave Cybex five days to contact them to purchase a license.  DED Decl., Ex. G.  In the next sentence, counsel threatened that failure to negotiate a license "will lead to the institution of proceedings."  Id.  On April 20, 2004, Biosig's counsel wrote demanding that "your client notify us of its intentions within a delay [sic] of two weeks from receipt of the present letter failing which our client will institute legal proceedings without any further notice or delay." Id., Ex. I.  On July 9, 2004, suit still not having been filed, Biosig's counsel wrote, listing the Cybex products that Biosig claimed were infringing, again demanding an answer within five days and threatening legal action "without any further notice or delay."  Id. Ex. J.[14]  Even supposing that Biosig's threats were sufficiently concrete to create an anticipation of a specific lawsuit contemplated by Biosig, Biosig repeatedly failed to meet its own deadlines.

That Biosig had no intention of suing Cybex first is confirmed by a voicemail left by Biosig's counsel on the telephone of Cybex's counsel, a transcription of which appears at DED

---

[14]  Biosig's claim that its Canadian counsel was never given any indication that talks with Cybex had broken down, and thus acted to avoid possibility of litigation, ignores the repeated deadline threats in the 2004 correspondence.  (BM at 13; DED Decl. Exs. G, I, J).  Repeatedly threatening imminent litigation is not an act designed to avoid the possibility of litigation.

#799932 v3
104480-51322

Decl., Ex. K.  There, Biosig's counsel makes clear that Biosig's action in this Court was brought only in response to Cybex's patent declaratory judgment action in Massachusetts. *Id.* ("**In turn** we were instructed by our client to file for patent infringement/breach of contract and unfair competition and we did so on Thursday.") (emphasis added).  The clear inference is that if Cybex had not filed its declaratory judgment action, Biosig would never have filed its suit and/or that Cybex would have been forced to suffer further from the uncertainty, harassment and legal risk posed by Biosig's "patent infringement" threats indefinitely.[15]

Biosig's claim that Cybex's suit is "little more than a legal ambush perpetrated for the purpose of enhancing Cybex's bargaining power in negotiations," is baseless.  (BM at 15).  As stated, Cybex's suit is a clear effort to bring a potentially endless series of litigation threats to some conclusion, and establish the necessary business certainty for Cybex to continue to operate.  See Orion Elec., 2002 WL 377541 *5 ("These facts, together with the undisputed allegation that defendants had… threatened infringement litigation, indicate that defendants sought to hold the Damoclean sword of an infringement action over plaintiffs' head for a significant period of time without actually proceeding to litigate.").[16]

### 2.    The Balance of Factors Urges Against Dismissal or Transfer

Courts in this district consider the following factors in deciding a motion to transfer under 28 U.S.C. § 1404: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of the operative facts and the relative ease of access to the sources of proof; (5) the attendance of witnesses; (6) calendar congestion; (7) the

---

[15]    Biosig's claim that it would be inequitable "[t]o allow Cybex to profit from Biosig's responsible attitude," is absurd.  (BM at 13).  It would be inequitable to allow Biosig to continue to threaten litigation, which the evidence shows it clearly had no intention of instituting, and to permit Biosig to hang the threat of litigation and the accusation of infringement over Cybex indefinitely, without having to prove same.  See EMC Corp., 89 F.3d at 811.

[16]    Biosig's citation to Symbol Techs. v. Quantum Assocs., 2002 WL 225934 (D. Mass. Jan. 30, 2002), is unavailing. (BM at 16).  While courts look disfavorably on a party seeking to take advantage of good faith settlement efforts, Biosig's letters do not constitute bona fide negotiations, but are merely repeated demands for a license under the threat of litigation.

#799932 v3
104480-51322

desirability of having case tried by forum familiar with substantive law to be applied; (8) any practical difficulties; and (9) and how best to serve the interests of justice. See, e.g., Pixel Enhancement Labs. v. McGee, 1998 WL 518187, *3 (D. Mass. Aug. 5, 1998). "The defendant bears 'the burden of proving ... the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum.'" Id., cit. omit., quot. omit. All relevant factors urge against dismissal or transfer, and Biosig has made no showing of serious unfairness absent transfer.

**Convenience of the parties**: Clearly, this court is far more convenient for Cybex. The gain to the Canadian Biosig by transferring this matter to New York, is *de mininis*. While Biosig's present counsel is located in New York, convenience of counsel is not a consideration in deciding a motion to transfer. See, Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991). This factor urges against dismissal or transfer.

**Convenience of witnesses**: A party seeking to rely on the convenience of the witnesses to urge transfer cannot rely on vague generalizations, but must identify the material witnesses and generally describe their testimony. Mattel, Inc. v. Procount Business Servs., 2004 WL 502190, at *4 (S.D.N.Y. March 10, 2004); Florens Container v. Cho Yang Shipping, 245 F.Supp.2d 1086, 1093 (N.D. Cal. 2002). At this early stage, it is difficult to identify necessary witnesses. Obviously, Cybex employees, located in Massachusetts, will be important to both its and Biosig's case. RG Decl. ¶ 15. The same is true for Biosig's employees, presumably located in Canada. See Royal Ins. Co. v. Tower Records, Inc., 2002 WL 31385815, at *5 (S.D.N.Y. Oct. 22, 2002) (little weight given to convenience of witnesses located in neither transferor nor transferee district). This factor urges against dismissal or transfer.[17]

---

[17]    Biosig's argument that Cybex's witnesses could be deposed in Massachusetts ignores that those same witnesses would need to appear, in New York, for trial. (BM at 18). Biosig's claim that  "obliging a small company such as Biosig to have its party and non-party witnesses appear in both New York and Boston would be highly inconvenient," ignores that the convenience of witnesses located in neither the transferor not transferee district is accorded little weight.  (Id. at 18-19; Royal Ins. Co. v. Tower Records, Inc., 2002 WL 31385815, at *5 (S.D.N.Y. Oct. 22, 2002)).

#799932 v3
104480-51322

**Relative means of the parties**: Boston is only slightly further from Quebec than is New York City. Biosig can claim no compelling savings by being forced to litigate in one rather than the other. While Cybex may be a more substantial concern, both parties are corporations with employees. The relative financial means are not so disparate, nor the cost difference sufficiently great, for this factor to weigh strongly in either direction. This factor is neutral.[18]

**Locus of operative facts/sources of proof**: The locus plainly exists in Massachusetts. The accused infringer (Cybex) is located in Massachusetts and all of the allegedly infringing activities by Cybex occurred there. See I Create Int'l., Inc. v. Mattel, Inc, 2004 WL 1774250, *3 (S.D.N.Y. Aug. 9, 2004) ("In patent infringement cases, the locus of operative facts is where the design, development, and production of an allegedly infringing product took place."). With regard to the Confidentiality Agreement between Biosig and Cybex, any claim based on a breach thereof that occurred while Cybex was located in New York is over seven years old and time-barred. As for the location of relevant documents and ease of access to sources of proof, "the location of relevant documents is often the locus of operative facts. This is especially true in patent cases, where the bulk of evidence usually comes from the alleged infringer." Id. *4. This factor strongly urges against dismissal or transfer.

**Familiarity with substantive law**: It is settled that "[p]atent law is federal law and any district court may handle a patent case with equal skill." Bristol-Meyers Squibb Co. v. Andrx Pharmaceuticals, LLC, 2003 WL 22888804, *4 (S.D.N.Y. Dec. 5, 2003), cit. omit., quot. omit. As for, New York contract law is not so exotic as to strain the competence of this Court.[19] This factor is neutral.[20]

---

[18]    Biosig's claim that Cybex had sales in excess of $83 million in 2003, while Biosig is a small privately owned firm with one office in Montreal, is irrelevant. (BM at 19). Biosig had sufficient resources to pursue a multi-year campaign of "patent infringement" harassment, and could just as easily have sued Cybex in this district as in the Southern District of New York.

[19]    Biosig's claim that the best place to construe the Agreement is a New York court, "thus relieving this Court of the need to unnecessarily devote scarce resources to familiarize itself with

#799932 v3
104480-51322

**Interests of justice**:  "Massachusetts has an undeniable interest in providing a forum for residents accused of patent infringement."  Nova, 629 F.2d at 197 n3, cit. omit.  This Court's interest in providing a forum for Cybex is not traversed by the fact that Biosig has filed another patent infringement suit in the Southern District of New York, against a third party, particularly where the third party is identified as a Washington corporation with a corporate headquarters in Vancouver, and there is no apparent basis for filing the suit in New York apart from the location of Biosig's counsel's offices.  (BM at 19; HS Decl. Ex. O, ¶ 3).[21]  Again, convenience of counsel is not relevant, and should not overcome the clear interest of Massachusetts in adjudicating the patent infringement allegations against Cybex.  Princess House, 136 F.R.D. at 18.  This factor urges against dismissal or transfer.

## C.    There is No Enforceable Forum Selection Clause

Biosig's argument that the presence of a forum selection clause in the Confidential Agreement is a "significant and weighty factor" to be taken into account in deciding whether to dismiss or transfer this action, ignores that there is, in fact, no enforceable forum selection clause in the Agreement.  (BM at 16).  The relevant clause in the Agreement is not a true forum selection clause, but rather is merely a permissible jurisdiction clause.

The relevant clause reads, in pertinent part: "each Party submits to the jurisdiction of the New York Courts, in any action or proceeding with respect to this Agreement, including the federal district courts located in the State of New York."  DED Decl., Ex. A.

"The general rule in cases containing forum selection clauses is that when only jurisdiction is specified the clause will generally not be enforced without some further language

---

the law of another jurisdiction," ignores that New York contract law is not so recondite that it cannot be understood by a Massachusetts court.  (BM at 19).

[20]    Biosig concedes that the attendance of witnesses, calendar congestion and practical difficulties factors are neutral.  (BM at 18).

[21]    Similarly, the Southern District action against The Nautilus Group is not a "significant and weighty factor" in favor of dismissal or transfer.  (BM at 16; HS Decl. Ex. O ¶ 3).

#799932 v3
104480-51322

indicating the parties' intent to make jurisdiction exclusive." <u>John Boutari & Son, Wines & Sprits,</u>
<u>S.A. v. Attiki Importers & Distribs., Inc.</u>, 22 F.3d 51, 52 (2d Cir. 1994) (Clause reading "Any
dispute arising between the parties hereunder shall come within the jurisdiction of the
competent Greek Courts, specifically of the Thessaloniki Courts," held to be a permissive forum
selection clause, lacking "mandatory venue language.").

Here, the relevant clause in the Confidentiality Agreement parallels that in <u>John Boutari,</u>
and thus is permissive rather than mandatory.  The clause states only that the parties submit to
the jurisdiction of the New York courts.  There is no stipulation of the exclusive venue for any
dispute arising from the Agreement.  Had that been the parties' intent, they could have drafted
differently.  Williston provides the example: "Any action or other judicial proceeding for the
enforcement of this contract or any of its provisions shall be instituted only in the courts of the
State of _____."  1 Samuel Williston, <u>A Treatise on the Law of Contracts</u>, Forms § 15F22
("mandatory venue provision"); see also <u>Chisso America, Inc. v. M/V Hanjin Osaka</u>, 307
F.Supp.2d 621, 624 (D.N.J. 2003) (holding that a forum selection clause stating that any dispute
shall be governed by German law and determined by the courts of Bremen was a mandatory
forum selection clause creating exclusive jurisdiction).

There is no analogous language in the relevant clause here.  As a result, the clause is
permissible, and is not an enforceable  forum selection clause sufficient to constitute "a
significant factor that figures centrally in [this Court's transfer] calculus."  (BM at 18).

**D.    Alternatively, Cybex Requests Leave to Conduct Expedited
       Limited Discovery on the Issue of Personal Jurisdiction**

Alternatively, Cybex respectfully requests leave to take immediate limited discovery on
the issue of this Court's personal jurisdiction over Biosig, and also requests that this Court
postpone ruling on Biosig's motion until after such discovery is completed.  The limited
discovery can be conducted on an expedited basis, and there is no prejudice to Biosig from
allowing the requested discovery.

#799932 v3
104480-51322

Cybex's discovery will be limited to Biosig's contacts with, advertising in and sales in the District of Massachusetts.  Biosig admits that it has made sales into Massachusetts, but has been silent as to the amount thereof.  Discovery related to Biosig's sales into the forum, including any and all invoices and purchase orders and solicitations related to such sales, is directly relevant to the existence of personal jurisdiction.  See In re Lupron® Marketing and Sales Practices Litigation, 245 F.Supp.2d 280, 304 n2 (D. Mass. 2003) ("The First Circuit, among others, has approved the consideration of the volume of a defendant's sales in the forum in assessing the existence of general jurisdiction."), cit. omit.

Additionally, Biosig has purposefully advertised in a Massachusetts publication, "Club Business Entrepreneur," which is published by International Health, Racquet & Sportsclub Assoc., of Boston.  (DED Decl. Ex. L).  Advertising in a forum is relevant to personal jurisdiction.  See; Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 717 (1st Cir. 1996) (advertising in publications circulated in Massachusetts relevant to whether defendant purposefully availed itself of privilege of conducting activities there).

Courts in this District routinely permit jurisdictional discovery, where warranted.  See Szafarowicz v. Gotterup, 68 F.Supp.2d 38, 42 (D. Mass. 1999) (permitting limited jurisdictional discovery and reserving judgment on motion to dismiss until completion thereof).  "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."  Sunview Condominium Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997).  Diligence includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted.  See Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001).

Here, Biosig has moved to dismiss for lack of personal jurisdiction.  Cybex seeks discovery on the extent and breadth of Biosig's sales and advertising in Massachusetts.  Biosig has admitted sales in Massachusetts, and has deliberately advertised in a Massachusetts

#799932 v3
104480-51322

publication.  Discovery of additional sales in Massachusetts, including additional sales and solicitations of products allegedly covered by the patent-in-suit, will bolster this Court's ability to exercise jurisdiction over Biosig.  Discovery of the scope of Biosig's advertising in Massachusetts will establish that Biosig has purposefully availed itself of the benefits of conducting business here, and that the exercise of jurisdiction will not offend due process.

## CONCLUSION

For the foregoing reasons, Biosig's motion to dismiss or transfer should be denied, or alternatively, a decision on the motion should be stayed to permit Cybex to conduct limited expedited discovery on the issue of personal jurisdiction.

Respectfully submitted,

**GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey  07102-5497
(973) 596-4500
(973) 596-0545 Facsimile


By:  s/ Mark P. Kronfeld
Mark P. Kronfeld (BBO # 630830)
mkronfeld@gibonslaw.com
David E. De Lorenzi (Pro Hac Vice Pending)
Michael Cukor (Pro Hac Vice Pending)

Attorneys for Plaintiff
Cybex International, Inc.

Dated: December 1, 2004

#799932 v3
104480-51322