Mark P. Kronfeld (BBO # 630830)
David E. De Lorenzi (Pro Hac Vice Pending)
Michael Cukor (Pro Hac Vice Pending)
**GIBBONS, DEL DEO, DOLAN,**
**GRIFFINGER & VECCHIONE, P.C.**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey  07102-5497
(973) 596-4500
(973) 596-0545 Facsimile

Attorneys for Plaintiff
Cybex International, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYBEX INTERNATIONAL, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>BIOSIG INSTRUMENTS, INC.,<br><br>        Defendant. | Civil Action No.  04 11846 (DPW)<br><br>**DECLARATION OF DAVID E. DE LORENZI, ESQ. IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER** |

I, **DAVID E. DE LORENZI**, hereby state under penalty of perjury as follows:

1.       I am a Director of the firm of Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., counsel for plaintiff Cybex International, Inc. ("Cybex") in this action.  I have filed an application to be admitted pro hac vice on behalf of Cybex in this action.  I make this Declaration in support opposition to the motion of defendant Biosig Instruments, Inc., to dismiss this action or transfer it to the United States District Court for the Southern District of New York.

2.       Attached as Exhibit A is a true and accurate copy of a Confidentiality Agreement between Biosig Instruments, Inc. and Cybex International, Inc. executed on August 27 and 28, 1996.

3.      Attached as Exhibit B is a true and accurate copy of a letter by Gregory Lekhtman dated April 30, 1999.

4.      Attached as Exhibit C is a true and correct copy of a letter by Gregory Lekhtman dated May 20, 1999.

5.      Attached as Exhibit D is a true and correct copy of a letter by Michael T. Sweeney dated June 25, 1999.

6.      Attached as Exhibit E is a true and accurate copy of a letter by Lawrence R. Hefter, dated March 30 2001.

7.      Attached as Exhibit F is a true and correct copy of a letter by Alan M. Weisberg, dated May 14, 2001.

8.      Attached as Exhibit G is a true and accurate copy of a letter by David Mrejen, Esq., dated March 1, 2004.

9.      Attached as Exhibit H is a true and accurate copy of a letter by David E. De Lorenzi, dated March 25, 2004.

10.     Attached as Exhibit I is a true and correct copy of a letter by David Mrejen, dated April 20, 2004.

11.     Attached as Exhibit J is a true and correct copy of a letter by David Mrejen, dated July 9, 2004.

12.     Attached as Exhibit K is an accurate transcription of a voicemail I received from counsel for plaintiff on August 26, 2004.

13.     Throughout this Spring and Fall, I spoke on several occasions with Biosig's Canadian counsel, David Mrejen, in an effort to explain (again) why Cybex believes Biosig's patent infringement and other claims against the company are baseless.  On virtually every

2

occasion, Mr. Mrejen threatened that unless Cybex settled immediately (or by some other deadline), Biosig would commence a lawsuit against the company. But, Biosig never did.

14.    On August 25, 2004, this firm telephoned Biosig's counsel, advised counsel that the above-captioned lawsuit had been filed, and asked it counsel would accept service of the Summons and Complaint.

15.    Attached as Exhibit L is a true and accurate copy of excerpts from the November 2004 edition of "Club Business Entrepreneur" magazine.

16.    Attached as Exhibit M is a true and accurate copy of an order form printed from Biosig's web site.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated this **19** day of December 2004.

**DAVID E. DE LORENZI**

# EXHIBIT A

# CYBEX INTERNATIONAL, INC.
## CONFIDENTIALITY AGREEMENT

### Parties

1. Biosig Instruments Inc., a company incorporated under the laws of Canada whose registered office is at 440 19th Ave., Lachine, Quebec H8S 3S2 (including any U.S. subsisidiary of the company )

2. CYBEX INTERNATIONAL, INC. whose address is at 2100 Smithtown Avenue, Ronkonkoma, New York 11779.

Hereinafter called the Parties, a Disclosing or Receiving Party as the context so requires.

WHEREAS

1. The Parties wish to disclose and exchange Information (as defined herein) for the purpose of a possible collaboration between the parties ("The Authorized Purpose").

2. Such Information will be of a proprietary or confidential nature and the Parties, therefore, agree that such disclosure should be made under the conditions of confidentiality contained in this Agreement.

IT IS HEREBY AGREED

1. "Information" shall mean: all data, reports, interpretations, forecasts, records, drawings, documentation, software, prototypes, samples, know-how, formulae, processes, designs, photographs, specifications, instructions, commercial, financial and other Information whether in oral, written, machine readable or any other form provided or disclosed by one of the Parties to the other relevant to or in pursuance of the Authorized Purpose.

2. In consideration of the disclosure and exchange of Information between them, the Parties hereby undertake:

> To use Information only for the Authorized Purpose and strictly in accordance with the terms of this Agreement and not to otherwise use, exploit or copy the same without prior written agreement of the Disclosing Party.

1

2.2   To maintain confidential all Information and not to divulge the same to any third party (without prior written consent of the Disclosing Party).

2.3   To restrict dissemination or disclosure of Information within its organization to such employees (and external professional advisers) who have a need to know the same in furtherance of the Authorized Purpose PROVIDED THAT disclosure to external professional advisers shall not be made without prior written consent of the Disclosing Party and on the basis that such employees and advisers shall be made aware of and undertake to strictly observe the confidentiality obligations created by this Agreement.

2.4   To keep separate all Information and all Information generated by the Receiving Party based thereon from all documents and other records of that Party.

2.5   To keep all documents and any other material bearing or incorporating any of the Information at the usual place of business of the Receiving Party.

2.6   Not to use, reproduce, transform, or store any of the Information in an externally accessible computer or electronic Information retrieval system or transmit it in any form or by any means whatsoever outside of its usual place of business.

2.7   To make copies of the Information only to the extent that the same is strictly required for the Authorized Purpose.

2.8   On request of the Disclosing Party at any time to deliver up to that Party all documents and other material in the possession custody or control of the Receiving Party that bear or incorporate any part of the Information.

3. For the avoidance of doubt ownership of all its rights in Information will remain with the Party providing the same.   No license whatsoever is granted or implied hereunder in respect of the Information (beyond such as may be strictly necessary for the Receiving Party to use the Information to perform its obligations in pursuance of the Authorized Purpose during the period of this Agreement).

4. This agreement shall not apply to any Information which:

4.1   At the date of this Agreement is in the public domain or subsequently comes into the public domain through no fault of the Receiving Party and not in breach of this Agreement,

4.2   Was already known to the Receiving Party on the date of disclosure through a proper and lawful source, provided that such prior knowledge can be substantiated and proved by documentation;

2

4.3    Properly a...u lawfully becomes available to the Receiving Party from sources independent of the Disclosing Party.

5. On termination of this Agreement all Information and copies made thereof shall be returned to the Disclosing Party or destroyed at that Party's direction.

6. This Agreement shall be effective from the date hereof or commencement of discussions or activities in anticipation of the Authorized Purpose if earlier. It shall continue for a period of five years or until completion of the Authorized Purpose whichever is the earlier subject to extension by mutual agreement of the Parties PROVIDED ALWAYS that the obligations contained in Clause 2 shall survive expiry or termination for whatever cause.

7. This Agreement constitutes the entire understanding between the Parties with respect to its subject matter and cannot be changed except by written agreement between the Parties.

8. This Agreement shall be governed and construed as a contract made in New York according to the laws of New York and each Party hereby submits to the jurisdiction of the New York Courts, in any action or proceeding with respect to this Agreement, including the federal district courts located in the State of New York. The parties agree they may be served with process at the addresses set forth on the first page hereof.


Agreed and Accepted:                    Agreed and Accepted:

BIOSIG INSTRUMENTS, INC.                 CYBEX INTERNATIONAL, INC.

Jim Moffat                               Stephanie Angove
Vice President                           Project Manager, Cardiovascular Products

August 27 /96                            August 28 / 96
Date                                     Date


AE90S.1


3

# EXHIBIT B

# Biosig Instruments inc.

440  19 Ave., Suite 100
Lachine, Que., H8S 3S2
Canada

Phone 514 6370016
Fax 514 637 1353

April 30, 1999

without prejudice

Cybex International
Attn: Mike Sweeney
10 Trotter Drive
Medway, MA  02035

Dear Mike,

As per our conversation of April 29, 1999, please let me outline briefly the points of discussion:

1. It is obvious to Biosig that Cybex is infringeing on Biosig 4 sensor patented heart rate technology.

2. It is also clear to Biosig that Cybex is breaching on a 5 year confidentiality agreement signed between Biosig Instruments Inc. and Cybex International on August 26 and 27, 1996.

3. It is clear to Biosig that Cybex is breaching on the commitment of purchase order #80784-Item 3.

4. According to the documents it is clear that Biosig helped Cybex to develop a heart rate monitoring system including the design of electrodes, wire assemblies, printed circuit boards, software, and hardware configurations.  All of this work which contains confidential

technical information was provided to Cybex free of charge based on the good will which was generated by the signing of the confidentiality contract between Cybex International and Biosig Instruments.

5. It is clear to Biosig that Cybex delayed a 3,000 unit order for many months. During this period Cybex was working in parrellel sharing Biosig patented technology with Tectrix, Polar, and other competitors of Biosig.

6. We have agreed it is very important to find an immediate solution to the problem.

7. You have requested a copy of the agreement which I am forwarding to you by fax. Please note that besides this our files contain numerous correspondences between the engineers of Biosig Instruments and Cybex International which supports Biosig understanding that Cybex is infringeing and breaching on the contract.

Biosig is looking forward to your immediate attention to the above problems.

Sincerely,

Gregory Lekhtman
President

BIOSIG INSTRUMENTS INC.

FAX - COVER PAGE

TO:  Cybex International = Mike Sweeney

From: Biosig Instruments, Inc. = Gregory Lekhtman

No. of pages(including this page) = 6

Description:  Letter and signed documents.

Date sent:  April 30, 1999

Direct line: 514-637-1758
Fax line: 514-637-1353

# CYBEX INTERNATIONAL, INC.
## CONFIDENTIALITY AGREEMENT

### Parties

1. Biosig Instruments Inc., a company incorporated under the laws of Canada whose registered office is at 440 19th Ave., Lachine , Quebec H8S 3S2 (including any U.S. subsisidiary of the company )

2. CYBEX INTERNATIONAL, INC. whose address is at 2100 Smithtown Avenue, Ronkonkoma, New York 11779.

Hereinafter called the Parties, a Disclosing or Receiving Party as the context so requires.

### WHEREAS

1. The Parties wish to disclose and exchange Information (as defined herein) for the purpose of a possible collaboration between the parties ("The Authorized Purpose").

2. Such Information will be of a proprietary or confidential nature and the Parties, therefore, agree that such disclosure should be made under the conditions of confidentiality contained in this Agreement,

### IT IS HEREBY AGREED

1. "Information" shall mean: all data, reports, interpretations, forecasts, records, drawings, documentation, software, prototypes, samples, know-how, formulae, processes, designs, photographs, specifications, instructions, commercial, financial and other Information whether in oral, written, machine readable or any other form provided or disclosed by one of the Parties to the other relevant to or in pursuance of the Authorized Purpose.

2. In consideration of the disclosure and exchange of Information between them, the Parties hereby undertake:

    2.1    To use Information only for the Authorized Purpose and strictly in accordance with the terms of this Agreement and not to otherwise use, exploit or copy the same without prior written agreement of the Disclosing Party.

1

2.2 To maintain confidential all information and not to divulge the same to any third party (without prior written consent of the Disclosing Party).

2.3 To restrict dissemination or disclosure of Information within its organization to such employees (and external professional advisers) who have a need to know the same in furtherance of the Authorized Purpose PROVIDED THAT disclosure to external professional advisers shall not be made without prior written consent of the Disclosing Party and on the basis that such employees and advisers shall be made aware of and undertake to strictly observe the confidentiality obligations created by this Agreement.

2.4 To keep separate all information and all Information generated by the Receiving Party based thereon from all documents and other records of that Party.

2.5 To keep all documents and any other material bearing or incorporating any of the Information at the usual place of business of the Receiving Party.

2.6 Not to use, reproduce, transform, or store any of the Information in an externally accessible computer or electronic information retrieval system or transmit it in any form or by any means whatsoever outside of its usual place of business.

2.7 To make copies of the Information only to the extent that the same is strictly required for the Authorized Purpose.

2.8 On request of the Disclosing Party at any time to deliver up to that Party all documents and other material in the possession custody or control of the Receiving Party that bear or incorporate any part of the Information.

3. For the avoidance of doubt ownership of all its rights in Information will remain with the Party providing the same. No license whatsoever is granted or implied hereunder in respect of the Information (beyond such as may be strictly necessary for the Receiving Party to use the Information to perform its obligations in pursuance of the Authorized Purpose during the period of this Agreement).

4. This agreement shall not apply to any Information which:

4.1 At the date of this Agreement is in the public domain or subsequently comes into the public domain through no fault of the Receiving Party and not in breach of this Agreement;

4.2 Was already known to the Receiving Party on the date of disclosure through a proper and lawful source, provided that such prior knowledge can be substantiated and proved by documentation;

2

4.3   Properly and lawfully becomes available to the Receiving Party from sources independent of the Disclosing Party.

5. On termination of this Agreement all Information and copies made thereof shall be returned to the Disclosing Party or destroyed at that Party's direction.

6. This Agreement shall be effective from the date hereof or commencement of discussions or activities in anticipation of the Authorized Purpose if earlier. It shall continue for a period of five years or until completion of the Authorized Purpose whichever is the earlier subject to extension by mutual agreement of the Parties PROVIDED ALWAYS that the obligations contained in Clause 2 shall survive expiry or termination for whatever cause.

7. This Agreement constitutes the entire understanding between the Parties with respect to its subject matter and cannot be changed except by written agreement between the Parties.

8. This Agreement shall be governed and construed as a contract made in New York according to the laws of New York and each Party hereby submits to the jurisdiction of the New York Courts, in any action or proceeding with respect to this Agreement, including the federal district courts located in the State of New York. The parties agree they may be served with process at the addresses set forth on the first page hereof.

Agreed and Accepted:

BIOSIG INSTRUMENTS, INC.

Jim Moffat
Vice President

August 27 /96
Date

Agreed and Accepted:

CYBEX INTERNATIONAL, INC.

Stephanie Angove
Project Manager, Cardiovascular Products

August 28 / 96
Date

A8908/1

3

# EXHIBIT C

 **Biosig Instruments Inc.**

P.O. Box 860
Champlain, N.Y. 12919

Phone: 514 637- 0016, Fax: 514 637- 1353, Toll free:1-800 463-5470

May 20, 1999

Cybex International
Attn: Peter Haines/President
10 Trotter Drive
Medway, MA 02053



Dear Peter,

It has been many years since I have seen you. I am happy to
discover that you are the president of Cybex International.

As you are aware Biosig Instruments Inc. is a supplier for Cybex
of Biosig patented heart rate sensors. You know that Biosig was
a pioneer of contact heart rate monitors which are recognized
worldwide for their uniqueness. The Biosig patented principle
of 4 sensors is now starting to be understood by our competitors
who have decided to infringe on Biosig intellectual property
without realizing that Biosig technology is covered by several
patents.

Some people who infringed on us didn't know about our
Canadian patent#02033014 of December 21, 1990, or my United
States patent#DES254569 of March 25, 1980. Both patents
describe very well the physiological principles behind 4 sensor
monitors which have been many years work of discovery and
experience done by Biosig Instruments. Cybex International
recognized the Biosig technology and the principles behind it
and signed with Biosig Instruments a non-disclosure agreement
which led to the development of a special sensor for Cybex.

Biosig engineers helped Cybex engineers to develop the product which is used on several Cybex exercise machines. Cybex has placed several orders with Biosig and Biosig has filled these orders with a great appreciation, in writing, by Cybex purchasing department. Cybex purchasing department gave Biosig Instruments excellent quality reports.

Cybex placed an order with Biosig for 3,000 units, which is current and has not been shipped due to delays by Cybex. Biosig gave Cybex an excellent product and licensing fees. Suddenly the shipments have been postponed with the explanation that Cybex has internal problems with its suppliers.

Myself, during the IHRSA Show 99 in San Diego, I discovered that Cybex started to infringe on Biosig patented technology. I have sent letters to Mike Papulis and Mike Sweeney (enclosed) to which I have received no answers.

I am forwarding these letters to you and I hope that we will resolve this matter promptly.

Looking forward to hearing from you.

Best regards,

Gregory Lekhtman
(signed for Mr. Lekhtman by Sandy Ruoss, secretary).

cc: Alex S. Konigsberg, Q.C.
Attorney at Law/Lapointe, Rosenstein

# EXHIBIT D

Gregory Lekhtman
Biosig Instruments
P.O. Box 860
Champlain, NY 12919
Date: 6/25/99

**CYBEX**

Cybex International, Inc.
10 Trotter Drive
Medway, MA 02053
USA
508.533.4300
508.533.5500 fax

RE: Confidentiality Agreement dated 8/26/1996

Dear Mr. Lekhtman:

I have reviewed the confidentiality agreement signed in August 1996. The findings are:

1) We have not effected a collaboration between the two companies. We have a Buyer/Supplier relationship.
2) Since Cybex has not pursued a collaboration between the companies during the last two years and there is no further interest in any collaborative efforts, this memo serves as notice to end any possible collaboration and terminates the confidentiality agreement.
3) Cybex and its subsidiaries work with other suppliers/inventors of heart rate measurement devices and have independently developed alternative methods of heart rate measurement.
4) The device that Cybex uses in their treadmills does not nfringe US 5337753.
5) Cybex has used and continues to use a device supplied by you in one or more of its products.
6) Cybex has recently issued a Purchase Order to Biosig. Cybex honors the terms of its Purchase Orders. There is no guarantee that additional Purchase Orders will be issued to Biosig.

Cybex wishes to have a mutually beneficial buyer-supplier relationship. I look forward to your response which can be discussed during the week of July 19th.

Sincerely,

Michael T. Sweeney
VP Engineering & Chief of Operations Tectrix Fitness Equipment, a Cybex Co.

Cc: Bill Hurley

# EXHIBIT E

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.

1300 I STREET, N. W.

WASHINGTON, DC 20005-3315

202 • 408 • 4000

FACSIMILE 202 • 408 • 4400

**received**
4·04·01

WRITER'S DIRECT DIAL NUMBER:

202•408•4053

LARRY.HEFTER@FINNEGAN.COM

ATLANTA
404•653•6400
PALO ALTO
650•849•6600

TOKYO
011•813•3431•6943
BRUSSELS
011•322•646•0353

March 30, 2001

Mr. Peter Hines
Cybex International, Inc.
10 Trotter Drive
Medway, MA  02053

**VIA CERTIFIED MAIL**

<u>U.S. Patent No. 5,337,753 for Heart Rate Monitoring</u>

Dear Mr. Hines:

We have been retained by Biosig Instruments Inc. in connection with assertion of its U.S. Patent No. 5,337,753, a copy of which is enclosed as Exhibit A.

The '753 patent has been previously brought to Cybex's attention at least as early as April 30, 1999.  Thus far, Cybex has not provided any substantive response to Biosig's assertions with respect to its '753 patent.  Rather, Mr. Sweeney's June 25, 1999 letter to Mr. Lekhtman simply asserts, without any reasoning whatsoever, that Cybex does not infringe the '753 patent.

Our factual investigation has shown that Cybex continues to utilize a contact heart rate monitor as set forth in the '753 patent.  Indeed, the aerobic equipment displayed by Cybex at the October 2000 Club Show in Chicago, Illinois had a four electrode structure as described in the '753 patent.  Moreover, while we did not see Cybex's Hiker product at the Club Show, Cybex's product literature distributed at that show illustrates a four ring electrode structure precisely as shown in the '753 patent.  As you well know, Biosig's four electrode system provides an accurate means for measuring a user's heart rate from untreated palms during exercise.

In addition to the patent infringement issue associated with Cybex's contact heart rate monitor, we note that Cybex signed a Confidentiality Agreement with Biosig Instruments in August of 1996 (copy attached as Exh. B).  This Agreement required, *inter alia,* that confidential information disclosed to Cybex by Biosig be used for the limited purpose of exploring a collaboration between the parties and was not to be used for any other purpose.  ¶ 2.1.



RECEIVED
APR 0 3 2001
By

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.

Mr. Peter Hines
March 30, 2001
Page 2

Biosig subsequently provided proprietary information to Cybex that Cybex used in developing its contact heart rate monitoring system. Biosig's disclosure of proprietary information and Cybex's use of such information are reflected in at least the following communications (copies attached as Exh. C):

1. August 5, 1996 facsimile from J. Moffat to S. Angove;

2. August 22, 1996 facsimile from P. Okulov to B. Sargaent;

3. October 2, 1996 facsimile from P. Okulov to B. Sargaent (responding to October 1, 1996 facsimile from B. Sargaent to J. Moffat);

4. January 30, 1997 facsimile from J. Moffat to J. Champa;

5. February 6, 1997 facsimile from J. Moffat to M. Arndt;

6. March 10, 1997 facsimile from P. Okulov to M. Arndt;

7. August 6, 1997 facsimile from J. Moffat to M. Arndt; and

8. January 7, 1998 facsimile from J. Moffat to M. Padgett.

In short, Cybex gained access to Biosig's proprietary information under a confidentiality agreement. Without question, the documents demonstrate that Biosig's proprietary information was instrumental in developing Cybex's contact heart rate monitor in the 1996-98 time period. Cybex subsequently purchased products from Biosig for its contact heart rate monitor for a short time. Cybex then terminated its relationship with Biosig, while continuing to use technology developed by Biosig.

Rather than rehashing previous allegations of improper conduct, Biosig's objective is to develop a current business relationship with Cybex that will be mutually beneficial for both parties. In this regard, Biosig would be willing to license its '753 patent to Cybex for use on Cybex's wide variety of aerobic exercise machines. Such a license would, of course, also allow Cybex to use proprietary information obtained from Biosig.

Biosig is interested in a prompt resolution of this matter. Consequently, we are interested in initiating licensing discussions at the earliest possibility to move this matter

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.

Mr. Peter Hines
March 30, 2001
Page 3

forward in a constructive manner.  Please let us know Cybex's intentions in this regard by April 18, 2001.

Very truly yours,

Laurence R. Hefter

LRH/jol
Enclosures

# EXHIBIT F



**GUNSTER YOAKLEY**
ATTORNEYS AT LAW

Writer's Direct Dial Number: (954)468-1367
Writer's E-Mail Address: aweisberg@gunster.com

May 14, 2001

**_VIA FACSIMILE & VIA MAIL_**
Christopher P. Isaac, Esq.
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
1300 I Street, N.W.
Washington, D.C.  20005-3315

Re:    U.S. Patent No. 5,337,753  for Heart Rate Monitoring
   Biosig Instruments / Cybex International, Inc.
   Our File No. 23555.00003

Dear Mr. Isaac:

  We have been retained by Cybex International, Inc. to respond to letters from your firm dated March 30 and April 30, 2001, directed to Mr. Peter Hines, regarding the above-identified patent.  Kindly direct any further correspondence in this matter to our attention.  Please rest assured that Cybex takes this matter seriously and has carefully considered the points raised in the letters.  Cybex, however, strongly disagrees with position taken by Biosig for the reasons set forth below.

  Cybex acknowledges a satisfying relationship with Biosig while developing a contact heart rate monitor for a product known as Hiker, as well having purchased product from Biosig for use with the Hiker product.  However, Cybex discontinued purchases from Biosig for the Hiker product because Hiker sales were sluggish and no additional Biosig product was needed.  More specifically, Cybex no longer manufactured the Hiker product at the time of the October 2000 Club Show in Chicago, even though sales literature apparently remained in circulation that displayed the product.

  As claimed in the '753 patent, the Biosig product used with the Hiker requires four electrodes.  Your letter of March 30, 2001, refers to "aerobic equipment" displayed by Cybex a "four electrode" structure, without identifying a specific product by name or model As noted above, other than the discontinued Hiker product for which monitors were

Gunster, Yoakley & Stewart, P.A.
Broward Financial Centre
500 East Broward Boulevard, Suite 1400 • Fort Lauderdale, FL 33394
(954) 462-2000  Fax: (954) 523-1722
e-mail: clientservices@gunster.com • www.gunster.com

FORT LAUDERDALE • MIAMI • PALM BEACH • STUART • TALLAHASSEE • VERO BEACH • WEST PALM BEACH

Christopher P. Isaac, Esq.
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
May 14, 2001
Page 2

purchased from Biosig, current Cybex products do not use cardiac monitors having the claimed
"four electrode" configuration or other proprietary technology developed by Biosig. Please
review the enclosed copy of Cybex's superceded product literature from the year 2000, wherein
the only product that included a "four electrode" structure was the Hiker product, which, as
noted above, was not being manufactured or offered for sale at the time of the Show. We also
encourage you to review the current equipment offered by Cybex at www.cybexintl.com to
verify that none of its products include a "four electrode" monitor.

Currently, some of the products manufactured and marketed by Cybex do include heart
rate monitors; but, these monitors are structurally and functionally different than the monitor
used in the Hiker product, and the products were not developed using any improperly obtained
information. Instead, the current Cybex product line includes equipment having monitors
obtained from third parties, such as the CardioTouch monitor.

Details regarding the CardioTouch monitor can be found at www.salutron.com, as
Salutron, Inc. is the provider of these monitors. Enclosed for your convenience are page prints
from the Salutron site that describe the technical features of the patented monitor, Cybex as
customer of Salutron, and Cybex equipment that can be equipped with the Salutron monitor.

In view of the above, Cybex believes that the allegations presented in your letters are
without merit. Cybex and Biosig have had an amicable relationship in the past, and Cybex urges
Biosig to reconsider its present posture if it wishes to maintain a mutually beneficial with Cybex
in the future.

Sincerely,

Alan M. Weisberg

AMW/rs
Enclosures

# EXHIBIT G

**DAVID MREJEN** Attorney-Avocat
5603 Castlewood, Montreal, Quebec
H4W-1V1- email: davidmrejen@sympatico.ca
Tel: 514-993-4830 – Fax 514-576-4830

| Post-It® Fax Note | 7671 | Date 3/3/04 | # of pages ▶ 2 |
|---|---|---|---|
| To Jordan Mersky | | From Sue rreKure | |
| Co./Dept. | | Co. | |
| Phone # | | Phone # | |
| Fax # | | Fax # | |

March 1,2004

**WITHOUT PREJUDICE**

Attention: President
Cybex International Inc.
10 Trotter Drive
Medway, MA
02053 USA

**VIA FACSIMILE AND REGISTERED MAIL**

Fax: 508-533-5500

RE:     **Infringement of Canadian Patent 2,033,014 and**
        **U.S. Patent 5,337,753 "Heart Rate Monitor"**

Dear Sir,

Please be advised that I am the new attorney for Biosig Instruments Inc.

I have been analyzing the previous correspondence between Biosig lawyers and management in your organization. It is clear that as of today your company still continues to infringe on technology which has been entrusted to Cybex by Biosig Instruments in the form of technical documentation. We also have a non- disclosure agreement between your company and Biosig Instruments in support of our allegations.

To remind you of the facts please note the following:

Biosig is the owner of United States Patent No. 5,337,753 entitled "Heart Rate Monitor" and of Canadian Patent No. 2,033,014.

We bring the Patents to your attention in connection with cardio exercise equipment manufactured by your company, which incorporate heart rate monitors that clearly infringe upon several claims of Biosig Patents.

Your company should note that the Patents were granted following years of extensive research and development by Biosig and are currently under license to numerous companies.

The Patents are based on the principle of four sensors, constituting two pairs of Electromyogram (EMG) electrodes, connected to a difference amplifier. The process can be best described as a balancing of the EMG signals with the resulting output of the difference amplifier consisting of ELECTROCARDIOGRAM signals. The Patents clearly teach the practical way to construct a reliable heart rate monitor for exercise machines. Please note that before this invention there were attempts made to make a reliable heart rate monitor by Biosig. During fifteen years of research and development Biosig has discovered that it is theoretically and practically impossible to reliably monitor a heart rate from untreated hands. After invention of a new technique which Biosig called EMG/ECG sensors technology,

Biosig introduced its sensors to the fitness market supplying major equipment manufacturers with a large quantity of reliable sensors. These sensors became extremely popular and are now used all over the world.

Taking into consideration the above, any manufacturer who uses four balanced EMG Electrodes is obviously infringing on Biosig's patents.

As mentioned previously, Biosig's invention is licensed to several major multinational fitness companies. Any company wishing to sell or distribute or promote in any matter exercise equipment incorporating subject matter based on the claims of the Patents is obliged to obtain a license from Biosig. This obligation is not limited to manufacturers but also extends to distributors, wholesalers and retailers.
Any party infringing on the Patents is liable for damages resulting thereof.

At the time the technology was initially introduced by Biosig , Biosig had spent significant time and energy to be a provider of patented technology and supplier of unique patented sensors to Cybex. As a result of this technology, Cybex was able to succeed in the market by providing a unique patented contact heart rate monitor on exercise machines. Being successful in the market, Cybex has been followed by numerous competitors who started to infringe on Biosig Technology. Biosig has asked Cybex to protect Biosig patented technologies and to educate the market that infringement is not a good way to go. Instead, Cybex breached the above-mentioned agreements it had with Biosig Instruments and started to infringe on Biosig technology. Infringement of patented technology does not lie within the ethical standard of behavior one would expect from a recognized international public corporation such as yours.

At one point, Cybex was buying 50 percent of its required sensors from Biosig and simultaneously fifty percent from outside sources. When Biosig had discovered this, Biosig had advised Cybex management to stop infringing and to start respecting its obligations it had with Biosig Instruments. During the last meeting between Gregory Lekhtman , president of Biosig, and the representatives of Cybex it was mentioned that Cybex had formed a new company with a new management and that it would be a priority to resolve the infringement issue. Your company has not acted to stop the infringement and continues to infringe.

Based on the foregoing, we demand that your company immediately cease and desist from offering for sale, display or advertising any heart rate monitor based on our client's Patents. We further demand that your company cease and desist from importing, exporting, distributing, manufacturing and/or warehousing any fitness equipment incorporating a heart rate monitor based on the Patents.

We also demand that a detailed accounting of past sales and profits of equipment incorporating heart rate monitors based on Biosig's Patents be rendered within 30 (thirty) days of receipt of the present letter.

Your company should note that several companies have studied in depth the Patents, have recognized its strength and concluded that any litigation would undoubtedly conclude in Biosig's favor. These companies have negotiated mutually advantageous licensing agreements with our client. There are other companies with which Biosig is in the process of negotiating terms of a license. Our client has also instituted proceedings against a major retailer who has refused to cooperate.

Please contact the undersigned within five (5) days of receipt of the present letter should your company similarly be interested in obtaining a valid license so that it may continue to sell and to distribute equipment incorporating heart monitors described by the Patents.

Failure to either cease or desist from your company's infringing activities or to negotiate a fair and equitable licensing agreement will lead to the institution of proceedings.

Very truly yours,

David Mirejen
Attorney

# EXHIBIT H

# GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

ONE RIVERFRONT PLAZA

NEWARK, N.J. 07102-5496

973-596-4500

WEB SITE
http://www.gibbonslaw.com

DAVID E. DE LORENZI
Director
(973) 596-4743

DIRECT FACSIMILE
(973) 639-6235
ddelorenzi@gibbonslaw.com

March 25, 2004

**VIA EMAIL AND FEDERAL EXPRESS**

David Mrejen, Esq.
5603 Castlewood
Montreal, Quebec
Canada
H4W-1V1
davidmrejen@sympatico.ca

Re:  **Cybex International, Inc. / Biosig Instruments, Inc.**

Dear Mr. Mrejen:

This firm has been engaged by Cybex International, Inc. ("Cybex") in connection with your letter dated March 1, 2004 alleging infringement of U.S. Patent No. 5,337,753 and Canadian Patent No. 2,033,014 (the "Patents").

We are currently reviewing your letter and its enclosures, in addition to the referenced Patents.  We are also examining the prior correspondence between Biosig and Cybex from 2001.

In order for us to properly evaluate Biosig's claims and respond to your letter, we will need from you and/or your client information that is not identified in your letter or its enclosures. Specifically, please identify specifically the Cybex fitness equipment products that Biosig claims incorporate heart rate monitors that infringe any one of the Patents, either by identifying such products by model name, model number or the like.  To the extent you and/or your client have any Cybex product literature in that regard that you believe would be helpful in identifying the accused products, we encourage you to provide us with that literature as well.  Additionally, please identify the timeframe in which Biosig claims Cybex has sold the accused products. And, lastly, please identify specifically the heart rate monitors Biosig claims infringe either one of the Patents.  Here again, to the extent you and/or your client have any product literature or samples of the accused heart rate monitors, we encourage you to provide us with those materials or samples.

**GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE**

David Mrejen, Esq.
March 25, 2004
Page 2

With respect to Biosig's claims regarding the Confidentiality Agreement between Cybex and Biosig, here again, we need from you and/or your client more specific information in order to respond to Biosig's claims. Specifically, please identify in detail the information deemed confidential by Biosig that it claims has been used and/or disclosed by Cybex in breach of the Confidentiality Agreement. Although the correspondence between Cybex and Biosig enclosed with Biosig's counsel's prior correspondence identifies generally some information disclosed between the parties, neither those materials nor your letter identifies which, if any, of that information has been improperly used and/or disclosed by Cybex, as alleged by Biosig.

Cybex's intention is to attempt to resolve this matter amicably, if at all possible. In that spirit, after you had the opportunity to discuss this letter with your client and compile the information we have requested, I encourage you to get back to us as soon as possible in that regard. Of course, if you have any questions in the interim, or if you would simply like to discuss this matter further, please do not hesitate to call me at 973-596-4743 or email me at ddelorenzi@gibbonslaw.com.

Very truly yours,

David E. De Lorenzi

DED/mep

#749285 v1
104480-51322

# EXHIBIT I



# DAVID MREJEN
### ATTORNEY · AVOCAT

Without Prejudice

April 20, 2004

David E. De Lorenzi
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
Attorneys At Law
One Riverfront Plaza
Newark, N.J.
07102-4500
Fax:973-639-6235

**VIA FACSIMILE AND MAIL**

**Re: Biosig Instruments Inc. vs. Cybex International Inc.**

Dear Mr.Lorenzi,

Thank you for your prompt reply of March 25, 2004

After reviewing the situation with my client, please note the following:

We would be glad to provide you with the details of all the infringed products sold by Cybex but please take into consideration only Cybex has full details of all the cardiovascular products they manufacture since 1996. As mentioned in our initial letter, the products are using four balanced EMG electrodes. This is the only way to get a reliable reading of the heart rate and same is patented by Biosig Instruments Inc. I doubt that Cybex would incorporate heart rate monitors that do not provide a reliable reading. Such would be the case if they were only using two electrodes. Therefore, it would be easy for you to get a list of these products from your client.

We find it counterproductive to allocate resources to gather this information as your client can provide you same as it is well aware which of their products contain a four electrode configuration. We will gather such information should we need to proceed with litigation at which time we will be able to obtain and easily verify the full list of products which infringe on Biosig Patents.

As to the nature of the confidential information, please note that Biosig introduced Cybex to Biosig patented technology sometime in 1996. Biosig engineers were helping Cybex to incorporate its technology with Cybex products. Biosig had designed dedicated printed circuit boards and taught Cybex engineers how to balance the electrodes in order to comply with Biosig patent claims. To comply with these claims is important in order to make a working monitor as already mentioned hereinabove. The substantial correspondence between Cybex and Biosig clearly shows the steps of the development and information disclosed. That is the reason Cybex and Biosig had signed the Non-Disclosure agreement. Cybex had done substantial business with Biosig. It was only after that Cybex was purchased by new owners, that the infringement started. Cybex begun buying the sensors from two different sources.

Given the strength of Biosig's patents and the circumstances of the past relationship of cybex and Biosig it should be apparent to your client that Biosig intends to litigate the matter should your client fail to obtain a license and the amount of damages it will claim will be substantial.

5603, CASTELWOOD, MONTRÉAL, QUEBEC, CANADA  H4W 1V1
TELEPHONE: (514) 993-4830 · FAX: 1-866-557-8581 · E-MAIL: davidmrejen@onebox.com

As you can appreciate the seriousness of the matter and amount of time elapsed, we demand that your client notify us of its intentions within a delay of two weeks from receipt of the present letter failing which our client will institute legal proceedings without any further notice or delay.

Your Truly,

David Mrejen

# EXHIBIT J

# DAVID MREJEN
## ATTORNEY · AVOCAT

Without Prejudice

July 9, 2004

David E. De Lorenzi
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
Attorneys At Law
One Riverfront Plaza
Newark, N.J.
07102-4500
Fax:973-639-6235

**VIA FACSIMILE**

Re: Biosig Instruments Inc. vs. Cybex International Inc.

Dear Mr.Lorenzi,

Pursuant to our telephone conversation I have had the chance to discuss the matter with my client who has asked me to inform you of the following:

Please note that our client verified the equipment listed below as some of the infringed products sold by your client:

Treadmills:
700T
900T
710T
530T
515T
450T

Bikes:
700C
530C
530R

Ark trainers
600A
610A

Stepper:
600H Hiker

The terms below include any other equipment not mentioned herein which also infringe on Biosig Patents.

Our client would be ready to accept the following settlement terms in the form of a license:

The price for year 2004 and 2005 would be $10 per unit.
The prices for 2000-2004 would $6 per unit sold.
The prices for 2006 and every year thereafter shall be determined at the end of 2005.

Please note that our experts have determined the value of the license to be around $30 per unit. In the spirit that this matter be settled without litigation our client has suggested the lower terms.

Please provide us with an answer to our client's demands within 5 days of receipt of the present letter. If this is outside the range that your client was contemplating please provide me with a counter-offer in any form so that my client may consider same.

Should you need additional details please feel free to contact me.

If you fail to reply within the delay mentioned above; our client will instruct its attorneys in New York to proceed with legal action without any further notice or delay as it must protect its rights given the urgency of the matter.

This response is being sent solely to explore the potential for settlement and may not be used for any other purpose

Sincerely,

David Mrejen

# EXHIBIT K

# MEMORANDUM

TO:      FILE

FROM:   David E. De Lorenzi

RE:      *Cybex v. Biosig*:  Voicemail from Biosig's New York Counsel

DATE:    August 31, 2004

---

Below is a transcription of a voicemail received from Zafer Siddiqi on August 26, 2004.

My name is  Zafir Siddiqi, counsel for Biosig.  It has come to my attention that on Tuesday you filed a declaratory judgment action for non-infringement and possibly invalidity.  In turn, we were instructed by our client to file for patent infringement/breach of contract and unfair competition and we did so on Thursday.  I am unsure as to whether you served our client or if you are going to.  We have not served Cybex yet although our complaint is with the process server.  I would just like to know if you intend to serve our client and that way I can correspond and arrange to serve your client or if you prefer to withhold services by both parties so we can sit down and discuss this issue.  I can be reached at 212 514-5900.

# EXHIBIT L



Club Business

November 2004

# Entrepreneur

SUPPLEMENT TO CLUB BUSINESS INTERNATIONAL

Published by **International Health, Racquet & Sportsclub Association**

**PREMIER ISSUE!**

HEALTHFIT:
## Small Club,
## Big Success



**CALCULATING
MEMBER RETENTION** › 9
Your Questions Answered

**RISING FROM
THE ASHES** › 14
Rebuilding After Disaster Strikes

**WHEN OSHA
KNOCKS** › 22
Opening the Door With Confidence

## Welcome **Letter**

### en·tre·pre·neur (noun)—A person who organizes, operates, and assumes the risk for a business venture.



Photography: Tracy Powell

Welcome to the premier issue of *Club Business Entrepreneur*, IHRSA's magazine written specifically for operators of small and medium-sized, independently-owned health and fitness facilities.

Our goal is to provide tactical, practical information that will help you increase your club's profitability. Much of this information will come from people like you — owners and managers of successful IHRSA clubs. Other advice will come from experts in their respective fields, such as the legal, insurance, real estate, or marketing professions. Be sure to check out "Need to Know" (page 9) where you will find tried and true business models and formulas. This month's topic: member retention.

Our cover story encapsulates so much of what *Club Business Entrepreneur* is all about. When John Atwood and Beth Wald set out to open their own club, they expected to confront obstacles, as do all small business owners. Like you, they experienced a recession economy as well as the terrible terrorist attacks on September 11, 2001, and the aftermath. Unlike most of us, however, Atwood and Wald also faced a life-threatening illness. Their story is told on page 16.

One of President Bush's re-election campaign themes is about making America an "ownership society." While Republicans and Democrats may disagree on the best policies to pursue this goal, most would agree that

to "own" something—whether it be a house, a business, or an investment— is to care for it, and to work towards increasing its value.

To "own" something also means to be accountable. A general manager may not own the club in which he or she works, but any GM worth his salt "owns" the experience the club provides to its members. In short, his job is on the line. And any owner worth her salt knows that hiring employees with an ownership mentality is a crucial ingredient to business success.

So it is in this entrepreneurial spirit that IHRSA launches *Club Business Entrepreneur*, a resource for – and a tribute to – the owners of this remarkable industry.

Yours in health,

John McCarthy
Executive Director

Jay M. Ablondi
Publisher

### Club Business **Entrepreneur**

The mission of IHRSA is to grow, protect, and promote the industry, and to provide its members with benefits that will help them be more successful.

PUBLISHING

Publisher:
Jay M. Ablondi
jma@ihrsa.org

Content Editor:
Kristen A. Walsh
kaw@ihrsa.org

Contributing Editors:
Rick Devereux, William C. Howland,
Catherine Masterson McNeil,
John McCarthy,
Kathleen Hart Rollauer

Associate Director of Advertising:
Michele Eynon
me@ihrsa.org

Advertising Account Executives:
Jessica DiManno, William Finn,
Donna Garrity, Christine Richards

MEMBERSHIP

Director of Sales:
Meredith Poppler
mm@ihrsa.org

Sales Assistant:
Debbi Kellner

Sales Representative:
Tara Wislocki

Sales Managers:
Kevin Carroll, Manny Lherisse,
Bob Pelletier

Art Direction, Design, Production:
tpgcreative, Boston, MA

IHRSA EXECUTIVE DIRECTOR
John McCarthy
jmc@ihrsa.org

CLUB BUSINESS ENTREPRENEUR
EDITORIAL & ADVERTISING
OFFICES
ent@ihrsa.org
www.ihrsa.org/entrepreneur



Club Business Entrepreneur is
published semi-annually ©2004
by the International Health, Racquet &
Sportsclub Association, 263 Summer St.,
Boston, MA 02210 USA

POSTMASTER: Please send
change of address to
Club Business Entrepreneur,
263 Summer St., Boston,
Massachusetts 02210

Special Advertising Section ▪ www.ihrsa.org/buyersmart

## ASF International



**Club success starts with SmartLink™.** The ASF SmartLink™ system is a network of products and services designed to optimize the efficiency and profitably of your business. ASF provides full service payment processing and billing support, ClubPRO 3000® software with integrated online business and member management. Static and interactive marketing programs are designed specifically to increase referrals, sales and retention.

**For more information, call 800-227-3859 or log onto www.asfinternational.com**

## Biosig Instruments Inc.



See every beat of your heart with patented Insta-Pulse® contact heart rate monitors, which uses patented technology of 4 EMG/ECG sensors. Receiver of many international awards and medals. Also see our other unique, patented products at **www.biosiginstruments.com**

**Call: 800-463-5470**
**Fax: 514-637-1353**
➡ **Biosig Instruments Inc.**

## Body Bar Systems, Inc.



The Body Bar™ is a weighted, solid steel fitness bar encased in easy — grip durable rubber, with smooth rubber capped tips for added safety. Bars range in weight from 4 (2'), 9 (4'), 12 (4'), 15 (4'), 18 (4'), 24 (4'), and 30 (5') pounds, and easy to store. The bar is utilized in a wide variety of workouts for individuals, group fitness instructors and personal trainers. All products and programs are supported by the Master Your Body™ program of videos, master classes and workshops.

**Call for pricing. www.bodybars.com**
**800-500-2030**

## Exerflex



Fitness Flooring, the distributor of the premiere hardwood group exercise flooring Exerflex, now has rubber flooring as well. Flecks rolled rubber is manufactured in 4' widths and are custom cut at the factory to exactly match the length of your room, making installation easy. The speckled rolls are available in 6 colors and in various degrees of color concentration, with custom colors available. Flecks rubber comes with a five-year warranty and is extremely affordable.

**Call 800-428-5306 or visit www.fitnessfloors.com**

## Green Mountain Coffee



**Green Mountain Coffee Roasters – The Ultimate Coffee @ Work**

Perfect for your health club's coffee needs! These systems deliver a fresh, individually-brewed cup of gourmet coffee or tea - without the cleanup.

**For your FREE no obligation trial call**
**800-432-3402 or visit**
**www.GreenMountainCoffee.com**

*NASDAQ: GMCR*

## International Tanning Equipment



With the HEX, ITE introduced upright tanning to North America in 1979. Celebrating 25 years of excellence, ITE is the premiere manufacturer of vertical systems, providing the world with HEX UV units and HEX Spray units (see photo), as well as lamps, lotions, parts and more.

**Call 1-800-556-3201 or visit**
**www.itehex.com**

**EXHIBIT M**

Exerlopers Fitness Systems - Online Ordering                                     Page 1 of :



## Order Form

Please use this form to submit your order.
**Or order toll-free at 1 - 800- 463- 5470.**

Name: [                              ]

Address: [                              ]
[                              ]

City: [                    ]

State/Province: [Massachusetts      ▼]   Zip/Postal Code: [                ]

Phone: [                    ]   Fax: [                    ]
(with area code)                        (with area code)

Email: [                    ]

### Products Requested:

Exerlopers: Qty.: [          ] @ US$169.00

Insta-Pulse 105: Qty.: [          ] @ US$159.00

Insta-Pulse 107: Qty.: [          ] @ US$129.00

Insta-Pulse Wall Model 201: Qty.: [          ] @ US$299.00

Insta-Pulse Floor Model 203: Qty.: [          ] @ US$349.00

Antense: Qty.: [          ] @ US$159.00

Insta-Runner: Qty.: [          ] @ US$399.00

Body-Trim: Qty.: [          ] @ US$59.00

Your message : [                                              ]

Payment Method: [Select One      ▼]

Credit Card Number: [                              ]

Expiration Date: Month: [January      ▼] Year: [2004 ▼]

[Submit Your Order]   [Reset]

For a blank printable fax/mail order form click here.

**Home | Exerlopers | Insta-Runner | Insta-Pulse | Antense | Awards & Medals**

Exerlopers Fitness Systems - Online Ordering

Page 2 of

**Body Trim** | **Clippings & Comments** | **Gregory Lekhtman** | **Price List** | Order Form

To speak to our friendly representatives or to place an order call our toll-free number.

In US & Canada

# 1-800-463-5470

DEALERS & OEM ENQUIRIES WELCOME

Tel.: (514) 637 - 0016 - Fax: (514) 637 - 1353 - Email: **biosig@biosig.net**
**P.O. Box 860, Champlain, NY 12919**

All of the products on the Biosig web site are patented products. Please be aware of patent infringers. It is illegal to sell or buy patent infringed products.

We welcome your **feedback.**
**Copyright** © 1999- 2004 Biosig Instruments